UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL L. COMER, et al.,

     Plaintiffs,

v.                                  CASE NO.: 8:14-cv-607-T-23EAJ

GERDAU AMERISTEEL US, INC., et al.,

     Defendants.

_____/

## ORDER

     Challenging the defendants' unilateral change to a plan established under the Employee Retirement Income Security Act (ERISA), the plaintiffs sue (Doc. 40) under the Labor Management Relations Act (the LMRA) (Count I) and under ERISA (Count II).  Arguing that the plaintiffs failed to exhaust administrative remedies available for Count II, the ERISA count, the defendants move (Doc. 47) to dismiss.[*]

     "[A]s a general rule[,] plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."  *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000).  Nonetheless, no exhaustion is required

_____

[*] The defendants' motion to dismiss argues also that the plaintiffs fail to state a claim and that the plaintiffs' claims are time-barred, but the merits of those arguments are not resolved in this order.

"when resort to administrative remedies would be futile or the remedy inadequate." *Perrino*, 209 F.3d at 1316 (internal quotation marks omitted).

The plaintiffs admit to forbearing an administrative remedy available for Count II but argue that the futility exception applies because Count II challenges not an interpretation of the plaintiffs' ERISA plan but the legality of the defendants' change to the plan. *See Costantino v. TRW, Inc.*, 13 F.3d 969, 974–75 (6th Cir. 1994) (Jones, J.) (affirming a district court's finding that the administrative remedies were futile because the "suit [was] directed to the legality of [the] amended Plan, not to a mere *interpretation* of it"); *Alday v. Raytheon Co.*, 2006 WL 2294819, at *6 (D. Ariz. July 27, 2006) (Bury, J.) ("Plaintiffs argue that Defendant does not have the power to change the plan benefits . . . .  In other words, Plaintiffs challenge Defendant's inclusion in the Plan of a provision that was contrary to the alleged binding [collective bargaining agreements] . . . .  [Resolving the dispute] hinges on the collective bargaining agreements between the parties.  Such a legal inquiry would be futile in the administrative process."); *Zielinski v. Pabst Brewing Co.*, 360 F. Supp. 2d 908, 920–21 (E.D. Wis. 2005) (Randa, J.) ("The Court is not reviewing an administrator's denial of benefits (in which case the Court would require exhaustion of administrative remedies); it is examining whether the administrator had the legal authority to alter a contract governed by ERISA and the LMRA.").

The plaintiffs argue that the defendants' unilateral change to the plan breaches the parties' corresponding collective bargaining agreements (CBAs).  The defendants

respond that the plaintiffs "beg the exhaustion question . . . [because] Plaintiffs allege that the CBAs that prevent Gerdau from changing the Plan *are themselves plan documents*." (Doc. 61 at 4)  According to the defendants, *Costantino*, *Alday*, and *Zielinski* (each cited by the plaintiffs) are distinguishable from this action because "the Gerdau Committee has the discretion to interpret the CBAs that Plaintiffs contend are plan documents." (Doc. 61 at 4 (citation omitted))  In other words, the defendants argue that Count II depends not on a legal argument that the plan administrator cannot resolve but on the interpretation of plan documents, the disputed interpretation of which a plan administrator can resolve.  Citing only the precedent above, the plaintiffs assert in response that resort to the administrative remedy is futile because the plan administrator cannot change the plan and therefore cannot resolve Count II.  (Doc. 54 at 23)

The plaintiffs' assertion — that the plan administrator cannot change the plan terms — is susceptible to two competing interpretations.  The plaintiffs assert either (1) that the plan administrator cannot reverse the defendants' change to the plan, even if the plan forbids the change, or (2) the plan administrator cannot reverse the change to the plan because the plan (unlike the CBAs) permits the change.  Although the plaintiffs have cited precedent, that precedent interprets distinctive plans, not the plan in this action, and the plaintiffs have failed to demonstrate that the plan in this action is comparable.  Because a "'clear and positive' showing of futility [is] required before suspending the exhaustion requirement," *Bickley v. Caremark RX, Inc.*, 461 F.3d

- 3 -

1325, 1330 (11th Cir. 2006), that failure alone suffices to require the plaintiffs'

exhaustion of administrative remedies.  Nonetheless, a closer examination

undermines each of the plaintiffs' competing interpretations.

The first interpretation — that the plan administrator cannot reverse the

defendants' change to the plan, even if the plan forbids the change — is undermined

by the broad authority that the plan bestows on the plan administrator.  The plan

states, "It shall be a principal duty of the Plan Administrator to see that the Plan is

carried out[] in accordance with its terms . . . ."  (Doc. 47-37 at 6)  Further, the plan

states that "the Plan Administrator's powers . . . include . . . [the power] to interpret

the Plan . . . [and the power] to determine all questions concerning the Plan . . . ."

(Doc. 47-37 at 6)  These duties and powers, at least arguably, permit the plan

administrator to reverse changes to the plan that the plan itself forbids.  Further, each

opinion cited by the plaintiffs finds the plan administrator unable to reverse a change

that, although compliant with the plan, is otherwise forbidden.  *Costantino*, 13 F.3d

969 (considering a change that a statute, not the plan, allegedly forbade); *Diehl v.

Twin Disc, Inc.*, 102 F.3d 301 (7th Cir. 1996) (Flaum, J.) (considering a change that a

"shutdown agreement," not the plan, allegedly forbade); *Alday*, 2006 WL 2294819

(considering a change that CBAs, not the plan, allegedly forbade); *Zielinski*, 360 F.

Supp. 2d 908 (considering a change that a "shutdown agreement," not the plan,

allegedly forbade).

The second, more plausible interpretation of the plaintiffs' assertion is that the plan administrator cannot reverse the change to the plan because the plan (unlike the CBAs) permits the change.  However, by thrice alleging that the defendants have violated the plan, the plaintiffs have, in effect, alleged that the plan administrator can reverse the change.  First, in Count II, the plaintiffs assert that the plan change "repudiat[es the] terms of the Plan." (Doc. 40 at 14)  Second, in Count II, the plaintiffs allege that the defendants breached the CBAs and that the CBAs are "plan documents." (Doc. 40 at 14)  And third, in the responsive brief, the plaintiffs state that the plan change "constitutes a violation of plan terms." (Doc. 54 at 20)  Further, even if the plan permits the change and only the CBAs forbid the change, the defendants undermine the second interpretation by identifying the broad powers of the plan administrator.  The plan states that "the Plan Administrator's powers . . . include . . . [the power] to interpret the Plan . . . [and the power] to determine all questions concerning the Plan . . . ." (Doc. 47-37 at 6)  Even if the CBAs, which the plaintiffs label "plan documents," are not part of the plan, determining whether the defendants breached the CBAs (or the "plan documents") "concern[s]" the plan and is therefore, at least arguably, within the plan administrator's powers.

In sum, the plaintiffs have failed to present a "'clear and positive' showing of futility," *Bickley*, 461 F.3d at 1330, and their assertion is contradicted by both the complaint and the responsive brief and undermined by the broad powers that the plan bestows to the plan administrator.  Thus, the plaintiffs have at least a colorable,

plausible argument to present to the ERISA plan administrator. *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) ("The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which we review only for a *clear* abuse of discretion.").

## CONCLUSION

The defendants' motion (Doc. 47) to dismiss is **GRANTED IN PART**.  The plaintiffs must exhaust the administrative remedies available for Count II. Consideration of Count II is **STAYED** until a party by motion shows good cause for dissolving the stay.  *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 651 (7th Cir. 1996) (discussing a failure to exhaust administrative remedies and stating that "[t]he decision whether to stay a proceeding [or to dismiss the action] is entirely within the district court's discretion").  Further, because the plan administrator's resolution of Count II depends primarily on the arguments in Count I, consideration of Count I is **STAYED** until a party by motion shows good cause to dissolve the stay.  The defendants' motion (Doc. 47) to dismiss is otherwise **DENIED WITHOUT PREJUDICE**.  Because consideration of both counts is stayed, this action is **STAYED**.  Every four months, beginning four months after the issuance of this order, the parties must file a notice that briefly describes the status of this litigation.

The clerk is directed to terminate any pending motion and to

**ADMINISTRATIVELY CLOSE** the case.

ORDERED in Tampa, Florida, on November 18, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE