UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL L. COMER, et al.,

    Plaintiffs,

v.                                  CASE NO. 8:14-cv-607-T-23AAS

GERDAU AMERISTEEL
US INC., et al.,

    Defendants.
_____/

**ORDER**

    The plaintiffs sue (Doc. 73) Gerdau and Gerdau's "Retiree Medical Plan" and allege that the defendants breached a contractual duty to provide medical benefits to steelworkers who retired from Gerdau's plant in Sand Springs, Oklahoma. A June 12, 2014 order (Doc. 37) grants the plaintiffs' unopposed motion for class certification and certifies a class under both Rules 23(b)(1)(A) and 23(b)(2), Federal Rules of Civil Procedure. The parties move (Doc. 124) to amend the class definition and move (Doc. 125) for preliminary approval of the class settlement.

**1. Motion to amend the class definition**

    The unopposed motion under Rule 23(c)(1)(C) to clarify an ambiguous class definition warrants granting. In accord with the parties' request, the class includes:

> 1. Retirees (and their spouses and eligible dependents) of the Sand Springs, Oklahoma plant (the Plant) who (i) were represented during their employment by the United Steel, Paper and Forestry, Rubber,

> Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (formerly known as the United Steelworkers of America, AFL-CIO/CLC) on behalf of Local 2741 (USW), (ii) retired from the Plant between September 1, 1981, and March 2, 2011, and (iii) were receiving or were eligible to receive retiree health care benefits from Gerdau as of December 31, 2012 (i.e., retired under the company pension plan on other than a deferred vested pension from a group of employees designated by the company as covered by the Plan, and at the time of retirement had fifteen or more years of continuous service).
>
> 2. Surviving spouses (and their eligible dependents) who (i) were receiving a surviving spouse's benefit under the company pension plan as the surviving spouse of either a retiree described in paragraph one or an active employee of the Plan who was represented by USW and died between September 1, 1981, and March 2, 2011, at a time when the employee was accruing continuing service in a group of employees designated by the company as covered by the Plan, and (ii) were receiving or eligible to receive retiree health care benefits from Gerdau as of December 31, 2012.
>
> 3. All former employees of the Plant who were represented during their employment by USW (and their spouses, eligible dependents, or surviving spouses) who were receiving or were eligible to receive retiree health care benefits from Gerdau as of December 31, 2012, but who do not fall within paragraph one or two above.

**2. Motion for preliminary approval of the class settlement**

A class settlement commends approval if fair, adequate, and reasonable. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (identifying the six factors relevant to a settlement's fairness, adequacy, and reasonableness). Also, the settlement must not result from collusion between the parties. *Bennett*, 737 F.2d at 986. Cary Singletary, a mediator certified in the Middle District of Florida, facilitated the settlement (Doc. 126 at 13), and the record reveals no collusion between the parties.

Under the settlement (Doc. 125-1), Gerdau will contribute $1,800 annually to a "Health Reimbursement Account" (HRA) of each class member older than 65. To adjust for inflation, Gerdau will increase the contribution by 1.375% annually. Gerdau will offer the services of "One Exchange" (or a comparable service) to assist a class member in obtaining supplemental Medicare insurance, but a class member need not purchase the supplemental insurance through One Exchange (or the comparable service, if Gerdau contracts with another service) to receive the HRA contribution.

Gerdau will contribute $3,600 annually to the HRA of a class member younger than 65 but eligible for Medicare as a result of a disability. Again, Gerdau will increase the contribution by 1.375% annually to adjust for inflation. Gerdau will offer the services of "One Exchange" (or a comparable service) to assist a class member in obtaining supplemental Medicare insurance, but a class member need not purchase the supplemental insurance through One Exchange (or the comparable service, if Gerdau contracts with another service) to receive the HRA contribution. After a class member in this group turns 65, Gerdau will contribute an amount equal to Gerdau's contribution to a class member older than 65.

Gerdau will offer a class member younger than 65 and ineligible for Medicare the opportunity to enroll in the "restated Sheffield Plan," that is, the "plan of benefits that Gerdau has provided to the class before the changes at issue in this lawsuit, and which [Gerdau] continues to provide to" a class member younger than 65 and

ineligible for Medicare.  (Doc. 126 at 8)  Gerdau will contribute $8,820 annually to offset the premium under the "restated Sheffield Plan."  If the premium exceeds $8,820 annually, the class member must pay the excess.  After June 2, 2025, a class member in this group may elect either to remain in the restated Sheffield Plan or to receive an annual and pro-rated HRA contribution of $8,820.  If a class member elects the HRA contribution before turning 65, the class member cannot return to the restated Sheffield Plan.  (Doc. 126 at 9)  After a class member in this group turns 65, Gerdau will terminate the class member's enrollment in the restated Sheffield Plan and will contribute to the class member's HRA an amount equal to Gerdau's contribution to a class member older than 65.

Also, each class member will receive an equal share of $225,000, which Gerdau provides to "partially reimburse" a class member for "the additional amounts they paid for the costs of their medical and prescription during coverage since January 1, 2013."  (Doc. 126 at 9)  The parties estimate that each class member will receive $490, which Gerdau will deposit in the class member's HRA (if the class member maintains an HRA) or will pay by check (if the class member lacks an HRA).  Additionally, Gerdau will provide a "basic life insurance benefit" to each class member until death.  Finally, Gerdau agrees to pay no more than $725,000 in an attorney's fee, costs, and expenses.

In this circumstance, the settlement appears to resolve the class action fairly, adequately, and reasonably.  The plaintiffs, who acknowledge that "significant risks

- 4 -

remain to establishing both liability and damages" (Doc. 126 at 11), allege that Gerdau agreed in 1981 to provide retirees with health care benefits, that the 1981 agreement fixed the health care premiums, and that several labor agreements after 1981 continued the premiums in the 1981 agreement. But "missing or ambiguous documents" and the unavailability of "key witnesses" might diminish or preclude recovery. (Doc. 126 at 11) Rather than await an uncertain result at trial, the class members receive "immediate and certain relief" under the settlement. (Doc. 126 at 12) Additionally, both the time and the expense of litigating the action strongly favor approving the settlement. A trial, which might begin as late as 2020, requires the presentation of several thousand documents and the testimony of more than a dozen witnesses. Also, the parties expect little or no opposition to the settlement. Finally, the parties exchanged nearly 60,000 pages and deposed twenty-three witnesses in the three years after the complaint. The extensive discovery permitted an informed decision about the merits of the plaintiffs' claims and the likelihood of recovery. *See Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977). Because the settlement appears to resolve the class action fairly, reasonably, and adequately, the settlement warrants preliminary approval.

**3. Class notice, objections, and fairness hearing**

The proposed notice (Doc. 125-3) explains concisely the plaintiffs' claims, the class definition, and the settlement. Also, the notice explains that a class member cannot "opt out" of this Rule 23(b)(1)(A) and Rule 23(b)(2) class action and that the

settlement binds a class member. The notice states that class counsel will move for an attorney's fee, costs, and expenses and that the defendants agree to pay class counsel no more than $725,000 in an attorney's fee, costs, and expenses. (Doc. 125-3 at 11) The notice, which instructs a class member how to object to the settlement, is **APPROVED**. No later than **JUNE 21, 2017**, the defendants must mail the notice to the last-known address of each class member. If a mail carrier returns a notice, the defendants must use "reasonable efforts" (Doc. 126 at 13) to obtain the class member's address. If the search yields another address, the defendants must promptly mail the notice again.

**4. Fairness hearing**

On **SEPTEMBER 11, 2017**, at **8:30 a.m.**, in **Courtroom 15A** of the Sam M. Gibbons U.S. Courthouse, 801 N. Florida Ave., Tampa, Florida 33602, a hearing will permit a class member to object to the settlement and will decide finally whether the settlement fairly, adequately, and reasonably resolves the class action. A class member need not attend the fairness hearing unless the class member objects to the settlement. To object, a class member must submit a written objection to the court, to the class counsel, and to the defense counsel no later than **AUGUST 7, 2017**. The court's mailing address is:

    Clerk of Court
    U.S. District Court for the Middle District of Florida
    801 N. Florida Ave.
    Tampa, FL 33602

Class counsel's mailing address is:

>Feinstein Doyle Payne & Kravec, LLC
>Attn. Joel R. Hurt
>429 Fourth Ave., Law & Finance Bldg.
>Ste. 1300
>Pittsburgh, PA 15219

Defense counsel's mailing address is:

>Hill Ward Henderson
>Attn. Brett J. Preston
>101 E. Kennedy Blvd.
>Ste. 3700
>Tampa, FL 33602

A written objection must include:

1) the name of the action (*Daniel L. Comer v. Gerdau Ameristeel US Inc.*);
2) the case number (8:14-cv-607-T23AAS);
3) the objecting class member's name, mailing address, and phone number; and
4) an explanation of the objection and all evidence necessary to evaluate the objection's merit.

No later than **AUGUST 25, 2017**, the parties may respond to an objection and may submit a memorandum in support of final approval. Neither a response to an objection nor a memorandum in support of final approval may exceed fifteen pages.

**5. Motion for an attorney's fee**

No later than **JULY 27, 2017**, the class counsel may move for an attorney's fee, costs, and reasonable expenses attendant to the litigation.

## CONCLUSION

The unopposed motion (Doc. 124) to amend the class definition is **GRANTED**. Because the record reveals no collusion between the parties

- 7 -

and because the settlement appears to resolve the class action fairly, adequately, and reasonably, the motion (Doc. 125) for preliminary approval of the class settlement is **GRANTED**.  No later than **JUNE 21, 2017**, the defendants must mail the notice.  No later than **JULY 27, 2017**, the class counsel may move for an attorney's fee, costs, and reasonable expenses attendant to the litigation.  No later than **AUGUST 7, 2017**, a class member may submit a written objection.  No later than **AUGUST 25, 2017**, the parties may respond to an objection and may submit a memorandum in support of final approval.  On **SEPTEMBER 11, 2017**, at **8:30 a.m.**, in **Courtroom 15A** of the Sam M. Gibbons U.S. Courthouse, 801 N. Florida Ave., Tampa, Florida 33602, a hearing will decide finally whether the settlement fairly, adequately, and reasonably resolves the class action.

ORDERED in Tampa, Florida, on June 15, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE