UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DANIEL L. COMER, GLEN HUBANKS, RICHARD D. SCOTT, OLIVER FRANK WRIGHT, JR. and STEPHEN SOLOMON, on behalf of themselves and all other persons similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>GERDAU AMERISTEEL US INC., and GERDAU AMERISTEEL US RETIREE MEDICAL PLAN,<br><br>                    Defendants. | No. 8:14-cv-00607-SDM-EAJ<br><br>Class Action<br><br>**Demand for Jury Trial** |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

### I.   INTRODUCTION

The parties have entered into a Settlement Agreement setting forth the terms of a proposed settlement of this class action lawsuit.  On June 15, 2017, this Court granted Plaintiffs' motion for preliminary approval of the settlement and the parties' motion to amend the class definition.  (Doc. # 129).  The fairness hearing has been scheduled for September 11, 2017.  *Id.*

Pursuant to the Court's June 15, 2007 Order, Plaintiffs hereby move for an award of attorneys' fees, costs and expenses in the amount of $725,000, representing $635,757.50 in attorneys' fees and $89,757.50 in costs and expenses.  The requested fees represent a 40% discount (or a 0.6 negative multiplier) from the lodestar value of Plaintiffs' counsel's professional time, and an effective hourly rate of $262 for this complex class action.  The requested award also represents approximately 4.4% of the more than $16 million in total payments secured by the proposed settlement.  As part of the settlement, Defendants have agreed to pay this amount and do not oppose

Plaintiffs' motion.  As set forth below and in the supporting materials herewith, the requested fee and expense award is reasonable and should be approved.

## II.      BACKGROUND

This lawsuit concerns the collectively bargained healthcare benefits that Defendant Gerdau Ameristeel US Inc. ("Gerdau") has provided to a group of steelworkers who retired from a steel mill in Sand Springs, Oklahoma, as well as to the retirees' spouses, dependents and surviving spouses.  In 2013, Gerdau asserted that it had the right to unilaterally modify or terminate retirees' benefits.  It began charging pre-Medicare retirees more for their benefits, and replaced the benefits for Medicare-eligible retirees with a monthly stipend the retirees could use towards the cost of buying their own insurance.

Plaintiffs filed this lawsuit on March 11, 2014, to challenge Gerdau's asserted right to change retirees' benefits and to challenge the specific changes Gerdau had made.  (Doc. # 1). Plaintiffs alleged that Gerdau and its predecessors had contracted to provide retiree health benefits to class members through collective bargaining with the United Steelworkers of America (the "Union"), and that each of the successive labor agreements contained provisions establishing Gerdau's obligation to provide such benefits throughout each class member's retirement.  *Id.* at ¶¶ 3-4.  Plaintiffs further alleged that Gerdau's changes to their benefits breached its obligations under the collective bargaining agreements.  *Id.*  Plaintiffs proceed under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3).  *Id.*[1]

---

[1]  After the filing the action, the parties engaged in informal discovery, and Plaintiffs filed several amended complaints to clarify their allegations, reduce the number of issues Defendants would raise in a motion to dismiss, and conform the operative complaint to the agreed upon class definition.  (Docs. # 4, # 32, # 40).

On June 9, 2014, Plaintiffs filed an unopposed motion for class certification. (Doc. # 33). This Court granted this motion on June 12, 2014, certifying a non-opt out class under Rules 23(b)(1)(A) and 23(b)(2). (Doc. # 37). On June 15, 2017, this Court granted the parties' motion to modify the class definition as follows:

> 1. Retirees (and their spouses and eligible dependents) of the Sand Springs, Oklahoma, plant (the Plant) who (i) were represented during their employment by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (formerly known as the United Steelworkers of America, AFL-CIO/CLC) on behalf of Local 2741 (USW), (ii) retired from the Plant between September 1, 1981, and March 2, 2011, and (iii) were receiving or were eligible to receive retiree health care benefits from Gerdau as of December 31, 2012 (i.e., retired under the company pension plan on other than a deferred vested pension from a group of employees designated by the company as covered by the Plan, and at the time of retirement had fifteen or more years of continuous service).

> 2. Surviving spouses (and their eligible dependents) who (i) were receiving a surviving spouse's benefit under the company pension plan as the surviving spouse of either a retiree described in paragraph one or an active employee of the Plan who was represented by USW and died between September 1, 1981, and March 2, 2011, at a time when the employee was accruing continuing service in a group of employees designated by the company as covered by the Plan, and (ii) were receiving or eligible to receive retiree health care benefits from Gerdau as of December 31, 2012.

> 3. All former employees of the Plant who were represented during their employment by USW (and their spouses, eligible dependents or surviving spouses) who were receiving or were eligible to receive retiree health care benefits from Gerdau as of December 31, 2012, but who do not fall within paragraph one or two above.

(Doc. # 129).

On July 1, 2014, Defendants filed a lengthy motion to dismiss with eighteen exhibits, asserting that (i) Plaintiffs had failed to exhaust their administrative remedies, (ii) the Complaint failed to state a plausible claim for relief, and (iii) Plaintiffs' claims were barred by the statute of

limitations.  (Doc. # 47).  On July 8, 2014, Defendants filed a motion for protective order and to stay discovery pending a ruling on the motion to dismiss.  (Doc. # 52).  This Court denied the motion to stay discovery on October 22, 2014 (Doc. # 65), but granted Defendants' motion to dismiss in part on November 18, 2014, staying the case while Plaintiffs exhausted the administrative remedies available for their ERISA claims and denying the remainder of the motion without prejudice.  (Doc. # 66).

While the case was stayed, Plaintiffs submitted an administrative claim for benefits to the Gerdau Benefits Plan Administrative Committee on February 17, 2015, comprised of a twenty-two page letter and thirty-five exhibits.  (Doc. # 73-1).  The Committee denied Plaintiffs' administrative claim on March 19, 2015.  (Doc. # 73-2).  Plaintiffs appealed the denial of their claim on September 14, 2015 (Doc. # 73-3), and the Committee denied their appeal on October 13, 2015 (Doc. # 73-4).  Thereafter, the parties filed a joint motion to dissolve the stay (Doc. # 71), which the Court granted on November 25, 2015.  (Doc. # 74).

After the stay was dissolved, the parties submitted an updated case management report with their respective positions as to how discovery should proceed.  (Doc. # 75).  The Court and the parties agreed to bifurcate liability and damages issues, with damages to be litigated only if Plaintiffs prevailed on the issue of liability.  Defendants also sought to limit the scope of discovery until the Court decided a renewed motion to dismiss.  The Court construed Defendants' position on this point as a motion for a partial stay of discovery, which it denied on January 5, 2016.  (Doc. # 82).  On December 11, 2015, Defendants filed a renewed motion to dismiss Plaintiffs' breach of contract claim under the LMRA, again asserting that the Complaint failed to state a plausible claim and that the claim was barred by the applicable statute of limitations.  (Doc. # 79).  This Court denied Defendants' renewed motion to dismiss in its entirety on September 8, 2016.  (Doc. # 93).

The parties engaged in extensive discovery in 2016 and early 2017. The case presented document-intensive breach of contract claims, with the documents and events at issue going back more than 30 years.  After the Court permitted full discovery on liability issues, the parties served new document requests and interrogatories and supplemented their initial disclosures and previous responses to the initial discovery served in 2014 before the action was stayed.  Declaration of Joel R. Hurt ("Hurt Decl.") at ¶ 2.  Defendants also subpoenaed documents from the Union which had represented the retirees and negotiated the applicable labor contracts, as well as the Union's attorney in a 2001-2002 bankruptcy proceeding.  *Id.* at ¶ 3.  In total, more than 59,000 pages of documents were exchanged in discovery.  *Id.* at ¶ 4.  The parties had also taken 23 depositions (seventeen of which were out-of-state) by the time they reached a settlement in principle on April 25, 2017.  *Id.*

The parties also conducted expert discovery.  Defendants served the expert report of attorney Harley Riedel on September 30, 2016, which addressed the legal effect of a 2001-2002 bankruptcy proceeding on retirees' healthcare benefits.  *Id.* at ¶ 5.  Plaintiffs sought to exclude Mr. Riedel's opinions in a motion filed on October 18, 2016 (Doc. # 96), which this Court denied without prejudice on January 18, 2017.  (Doc. # 108).  At the time the parties agreed to settle, Defendants were in the process of supplementing Mr. Reidel's expert report, and Plaintiffs had retained a rebuttal expert, former United States Bankruptcy Judge Judith Fitzgerald, who was in the process of preparing her rebuttal report.  Hurt Decl. at ¶ 5.

The parties renewed settlement discussions in January 2017.[2]  *Id.* at ¶ 6.  They engaged in direct negotiations between mid-January and early April through a series of written proposals and

---

[2]  Early in the litigation, the parties participated in a mediation conference on July 21, 2014.  Despite devoting an entire day to the effort, the parties were not able to reach a settlement.  (Doc. # 55).

telephone calls.  *Id.*  Although the parties had made significant progress and agreed to a number of key points, they decided to engage the services of a third party mediator to assist them in reaching a final deal.  *Id.*  The parties participated in a mediation conference on April 25, 2017 with Cary Singletary serving as mediator, which resulted in the parties agreeing to a settlement in principle.  *Id.*  After the mediation and subsequent discussions, the parties reached the terms of a final settlement as embodied in the Settlement Agreement executed on June 2, 2017.[3]  *Id.*  The parties' negotiations were extensive and arm's-length.  *Id.*

On June 15, 2017, the Court preliminarily approved the proposed settlement, approved the Class Notice, directed Class Counsel to file their motion for an award of attorney's fees and expenses by July 27, 2017, and scheduled the Fairness Hearing for September 11, 2017.  (Doc. # 129).

## III.     KEY TERMS OF THE PROPOSED SETTLEMENT

Plaintiffs have achieved a substantial recovery on behalf of the class, with the settlement obligating Gerdau to provide a series of payments totaling more than $16 million over the remainder of class members' lifetimes.  Hurt Dec. at ¶¶ 8-12.  The settlement provides nearly all[4] class members with future healthcare benefits for the remainder of their lives, or in the case of child dependents, as long as they are eligible under the plan document, or if later, until as required by law.  All class members will also share equally in a lump sum payment of $225,000, which Gerdau will make to partially reimburse them for the additional amounts they paid for the cost of their healthcare coverage since January 1, 2013.  In consideration for this relief, Plaintiffs and all

---

[3]  The Settlement Agreement appears in the record at Docs. # 125-1 and # 125-2.

[4]  There are two former spouses and two former child dependents who no longer meet the eligibility requirements for continuing coverage, either due to divorce or due to reaching age 26.  Hurt Decl. at ¶ 11.

class members will provide Defendants with the release of claims described in Section IV.B.2 of the Settlement Agreement.  The key terms of the proposed settlement are summarized below.

**A.      Class members who are age 65 or older.**

For class members who are age 65 or older, Gerdau will continue to fund a Health Reimbursement Account ("HRA") for the remainder of their lives.  The annual contribution for 2017 will remain $1,800.  On January 1st of each subsequent year, Gerdau will increase the amount of the annual contribution by 1.375%.  Gerdau will continue to offer the services of One Exchange or a similar service to assist class members in obtaining suitable Medicare supplement policies, but class members will no longer be required to purchase coverage through these services in order to receive the HRA contributions.  *See* Settlement Agreement, Section IV.B.3.a.

**B.      Class members who are younger than age 65 and eligible for Medicare due to disability.**

For class members who are younger than age 65 but eligible for Medicare due to disability, Gerdau will continue to fund an HRA for the remainder of their lives.  The annual contribution for 2017 will be doubled to $3,600 (but prorated to cover the period left in calendar year 2017 after the settlement becomes effective).  On January 1st of each subsequent year, Gerdau will increase the amount of the annual contribution by 1.375%.  Gerdau will continue to offer the services of One Exchange or a similar service to assist class members in obtaining suitable Medicare supplement policies, but class members will no longer be required to purchase coverage through these services in order to receive the HRA contributions.  *Id.* at Section IV.B.3.b.i.

Once the class members in this group reach age 65, the annual contribution will decrease to the amount of the annual contribution Gerdau is then making to class members who are age 65 and older.  *Id.* at Section IV.B.3.b.ii.

**C.   Class members who are younger than 65 and not on Medicare due to disability.**

For class members who are younger than age 65 and not on Medicare due to disability, Gerdau will adopt a "restated Sheffield Plan"[5] that will continue to offer such class members the same healthcare coverage Gerdau currently offers them until they reach age 65 (or become eligible for Medicare due to disability, or in the case of children, until they are no longer eligible). *Id.* at Section IVI.B.3.c.ii. Gerdau agrees not to change the terms of the restated Sheffield Plan, but it may change carriers or administrators due to such entities coming or going from the market or due to service or cost increases, and such carriers or administrators may make non-material changes to the plan design or provider/hospital networks so long as these changes do not substantive alter benefits. *Id.* at Section IV.B.3.c.iii. & iv.

Gerdau will contribute $8,820 to the annual cost of each class member's coverage under restated Sheffield Plan, and class members will pay the portion of the annual cost of coverage that exceeds $8,820.[6] *Id.* at Section IVI.B.3.c.v. At any time after eight years, the class members remaining in this group will be offered a choice between (i) remaining in the restated Sheffield Plan, or (ii) receiving an HRA into which Gerdau will make an annual contribution of $8,820 (the amount to be prorated for periods less than a full year). Class members who elect to receive an HRA prior to reach age 65 will not be permitted to return to the current or restated Sheffield Plan. *Id.* at Section IV.B.3.c.vi.

---

[5]  The "Sheffield Plan" is the plan of benefits that Gerdau had provided to the class before the changes at issue in this lawsuit, and which it continues to provide to non-disabled pre-65 class members.

[6]  This is the amount Gerdau has contributed towards the annual cost of single coverage under the current Sheffield Plan since 2013.

Once the retirees, spouses, and surviving spouses in this group reach age 65, Gerdau will fund an HRA for the remainder of their lives at the annual contribution amounts Gerdau is then making to class members who are age 65 and older. *Id.*

### D.    Open Enrollment

With the exception that non-disabled class members under the age of 65 who elect to receive an HRA may not return to the current or restated Sheffield Plan, all class members will have the opportunity to enroll or re-enroll for the benefits provided under the settlement during any future annual enrollment window. *Id.* at Section IV.B.4.

### E.    Lump Sum Payment

Gerdau will pay $225,000 to partially reimburse class members for the additional amounts they paid for the costs of their medical and prescription drug coverage since January 1, 2013. Each class member will receive an equal share of this payment, which the parties currently estimate will be $493 per class member. Class members with an HRA will receive their share through a one-time contribution to their accounts. Class members who do not have an HRA, and the estates of deceased class members, will be paid by check. *Id.* at Section IV.B.6.

### F.    Life Insurance

Gerdau currently affords certain retirees in the class a basic life insurance benefit. Under the settlement, Gerdau has agreed to provide this basic life insurance benefit to all retiree Class Members, and to keep it in place, without modification, for the remainder of each retiree Class Member's lifetime. *Id.* at Section IV.B.5.

### G.    Attorneys' Fees

Gerdau has agreed to pay Plaintiffs' attorneys' fees, costs and expenses in the amount of $725,000, but no more, and not to oppose Plaintiffs' application for attorney's fees, costs, and

expenses, provided that Plaintiffs do not request an award of more than $725,000.  *Id.* at Section IV.B.7.

## IV.   ARGUMENT IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES

Federal Rule of Civil Procedure 23(h) permits a court in a certified class action to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Rule further provides that "[a] claim for an award must be made by motion under Rule 54(d)(2)," notice of which must be "directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).  In turn, Rule 54(d)(2) requires a claim for fees to be made by motion, and specifies its content, including "the grounds entitling the movant to the award" and "the amount sought."  Fed. R. Civ. P. 54(d)(2)(B).  Fee applications are typically filed within 14 days after judgment, (Fed. R. Civ. P. 54(d)(2)(B)(i)), but because of the notice requirement of Fed. R. Civ. P. 23(h), they are filed in advance of the objection deadline in class action lawsuits.

In compliance with Rule 23, the following explanation was included in the Court approved notice that was mailed to Class Members on June 23, 2017:

> Subject to approval by the Court, Gerdau has agreed to pay $725,000, but no more, of Class Counsel's attorneys' fees and litigation expenses.  Payment of fees and expenses to Class Counsel has no effect on the benefits to be received by members of the Class.
>
> Class Counsel's motion for attorney's fees and expenses will be filed with the Court on or before July 27, 2017.  In addition to objecting to the proposed settlement, any Class Member may also advise the Court about any objections he or she has to the adequacy of representation by Class Counsel or to Class Counsel's motion for attorney's fees and expenses.

(Doc. # 131-1).

As a threshold matter, the Court may bypass the below ERISA analysis entirely because Fed. R. Civ. P. 23(h) expressly provides attorneys' fees and costs in class actions may be

authorized by the parties' agreement and Defendants have agreed to pay these fees and costs, subject to the Court's approval, thus acknowledging that Plaintiffs' counsel is entitled to such an award.  However, Plaintiffs explain below why they are entitled to fees and costs under the ERISA fee-shifting analysis.

### A.    ERISA Authorizes an Award of Reasonable Attorney's Fees

ERISA provides that in any action "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  In interpreting this provision, the Supreme Court has directed that a fee applicant must first show "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010). Here, where Gerdau had asserted the unilateral right to modify or terminate class members' healthcare benefits any time it wanted, and had actually begun to make unilateral modifications, there can be no question that locking-in a set level of healthcare benefits for the remainder of class members' lifetimes qualifies as "some degree" of success on the merits.

Once a party has demonstrated some degree of success on the merits, the court must consider five factors when deciding whether to award fees to the party:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and] (5) the relative merits of the parties' positions.

*Freemen v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993).  None of the foregoing factors "is necessarily decisive ... but together they are the nuclei of concerns that a court should address."  *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

Here the "five factor" analysis plainly supports an award of attorneys' fees. In this case, the first and fifth factors are neutral, because the Court has made no findings as to either Gerdau's "culpability"[7] or the "relative merits" of the parties' positions. Plaintiffs' claims survived a motion to dismiss and after extensive discovery the parties agreed to settle prior to a merits determination. However, the second, third, and fourth factors all weigh in favor of an award of attorneys' fees. The second factor supports an award because Gerdau is a major steel manufacturer with operations in fourteen countries, which ranks as the largest producer of long steel in the Americas. *See* https://www.gerdau.com/en/media-center/profile#. By entering into the settlement and agreeing to pay the requested fees, Gerdau is clearly willing and able to satisfy the award. The third factor also supports an award because in ERISA cases "the deterrent value of an award of attorney's fees is high." *Pinero v. Reliance Std. Life Ins. Co.*, 2015 WL 1333281, *4 (M.D. Fla. March 24, 2015) (quoting *Nat'l Cos. Health Benefit Plan v. St. Joseph's Hosp. Inc.*, 929 F.2d 1558, 1575 (11th Cir. 1991), abrogated on other ground, *Geissal v. Moore Med. Corp.*, 524 U.S. 74 (1998)). Likewise, the fourth factor supports an award. Plaintiffs have conferred tangible benefits on more than 450 class members who were fellow participants and beneficiaries of Gerdau's retiree health plan.[8]

**B.     The Requested Fee – About 60% of Class Counsel's Lodestar – Is Reasonable**

The amount of a fee award is calculated, in the Eleventh Circuit, according to a "lodestar" formula which requires multiplication of "the number of hours reasonable expended by a

---

[7]  Plaintiffs note that the first factors refers to "culpability" *or* "bad faith." Courts do not hesitate to award ERISA fees even where defendants did not act in bad faith. *See, e.g., Barlow v. Sun Life and Health Ins. Co.*, 2011 WL 3475298, *1 (M.D.Fla. Aug. 9, 2011) (citing cases from the Middle District of Florida); *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011) ("[a] district judge need not find that the party ordered to pay fees engaged in harassment or otherwise litigated in bad faith. Language in some appellate opinions declaring bad faith vital to an award under § 1132(g)(1) did not survive *Hardt*.").

[8]  Plaintiffs additionally note that they are receiving the same benefits under the settlement as all other class members, and that unlike in many class action settlements they are not requesting incentive or service awards for their contributions to bringing, prosecuting and settling the action.

reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The court typically must also then determine whether an adjustment to the lodestar is necessary based on the results obtained.[9] *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). "Ultimately, the computation of a fee award is an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Further, the Court itself is "an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses to value." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skills, experience and reputation." *Id.* at 1299. "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Barnes*, 168 F.3d at 437. Non-local rates are appropriate in some circumstances, however. The Eleventh Circuit stated in *Barnes* that "[i]f a fee applicant desires to recover non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* The Eleventh Circuit also stated in *Barnes*, that it did not "rule out the possibility that there might be a case where use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience." *Id.* at 438.

---

[9] While multipliers of 2-3 times lodestar are common, *see Martin v. Global Marketing Research Services, Inc.*, 2016 WL 6996188, *2 (M.D. Fla. 2016), Class Counsel are not seeking a multiplier—and, in fact, have agreed to a 40% discount—on the lodestar value of their time at their customary rates.

Here, Plaintiffs submit that reasonable hourly rates in this class action are Class Counsel's normal hourly rates charged in their national ERISA practice. Plaintiffs have submitted the Declaration of John Tucker, a highly experienced ERISA litigator with offices in Tampa, who confirms the lack of local attorneys who are willing and able to handle plaintiff-side class action litigation asserting claims under ERISA and the LMRA for collectively bargained retiree healthcare benefits. *See* Declaration of John V. Tucker ("Tucker Decl.") at ¶¶ 10-11 ("Class action involving claims under the LMRA and ERISA for collectively bargained retiree healthcare benefits are a little-practiced sub-specialty of ERISA practice. They require a unique subset of knowledge, which most ERISA participant-side attorneys (already a small group) do not possess. ... I am not aware of any practitioners located in the Middle District of Florida that would represent participants in the subject matter of the litigation.").

Indeed, Plaintiffs are aware of only three other such cases having been litigated in the Eleventh Circuit, none of which were litigated in the Middle District of Florida. Hurt Decl. at ¶ 14 (citing *United Steelworkers v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988) (Northern District of Alabama); *Stewart v. KHD Deutz of Am. Corp.*, 980 F.2d 698 (11th Cir. 1993) (Northern District of Georgia); *Groover v. Michelin N. Am.*, 90 F.Supp.2d 1236 (N.D. Ala. 2000)). Moreover, Plaintiffs' counsel William Payne served as one of plaintiffs' counsel in the *Connors Steel* case, which was filed more than 30 years ago. *Id.*

Federal courts nationwide have held that the reasonable rate for ERISA work is the national rate because "complex ERISA litigation involves a national standard and special expertise." *Tussey v. ABB Inc.*, 2012 U.S. Dist. LEXIS 157428, at *10 (E.D. Mo. Nov. 2, 2012) (citations omitted), *rev'd on other grounds*, 746 F.3d 327 (8th Cir. 2014) (considering evidence of hourly rates of $800 for attorneys with more than 25 years of experience, $625 for attorneys with 15-24

14

years of experience, and $450 for attorneys with 5-15 years of experience, court approved a blended rate of $514 for all attorneys).[10]   This is confirmed by the Tucker Declaration and the Declaration of well-known ERISA practitioner Ronald Dean (also submitted herewith).   Attorney Tucker attests that "[a]s a general matter, ERISA plaintiff practice is a national marketplace," and that his firm has a national practice which competes with similar practices around the country for prospective clients."   Tucker Decl. at ¶¶ 4, 12-13.   Attorney Dean, who maintains offices in California, attests that "[t]here are only a small number of firms in the United States with the knowledge and experience to successfully prosecute ERISA class actions," that Feinstein Doyle Payne & Kravec, LLC ("FDPK") is among this small number of qualified ERISA firms, and that the hourly rates charged by FDPK attorneys in this case "are in accord with the prevailing market rates for this type of class action litigation."   *See* Declaration of Ronald Dean, Esquire at ¶¶ 15-18. Attorney Tucker agrees, stating "in the national marketplace which pervades ERISA cases, the rates charged by Plaintiffs' counsel are slightly low compared to the rates that my firm must routinely compete with [firms in the cities cited in the declaration]."   Tucker Decl. ¶ 18.

---

[10] *See also Frommert v. Conkright*, 2016 U.S. Dist. LEXIS 171471, at *17 (W.D.N.Y. Dec. 12, 2016) (awarding fees at national ERISA rates); *Amos v. PPG Indus.*, 2015 U.S. Dist. LEXIS 106944, at *28 (S.D. Ohio Aug. 13, 2015) (awarding fees based on "prevailing national market rates for attorneys involved in complex class action ERISA litigation"); *Boxell v. Plan for Group Ins. of Verizon Communications, Inc.*, 2015 WL 4464147, *9 (N.D. Ind. July 21, 2015) (where "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that areas is a national market," including the "specialized field" of ERISA litigation, "the relevant community" is not the local market area, but the community of practitioners in that subject matter"); *Degrado v. Jefferson Pilot Financial Insurance Co.*, 2009 U.S. Dist. LEXIS 60515, *30 (D. Colo. July 6, 2009) (citations omitted) (noting that other courts have held that ERISA cases "involve a national standard" for determining attorneys' hourly fees); *Chesemore v. Alliance Holdings, Inc.*, 2014 U.S. Dist. LEXIS 123873, *21 (W.D. Wisc. Sept. 4, 2014) (recognizing that "ERISA cases involve a national rate" and approving hourly rates of $395 for lower-level associates and $895 for highest-level partners as on par with rates charged by plaintiffs' firms handling ERISA class actions); *Beesley v. International Paper Co.*, 2014 U.S. Dist. LEXIS 12037, *11-12 (S.D. Ill. Jan. 31, 2014) (finding the legal market for ERISA class action was "a national one" and approving rates between $394 to $892 as reasonable).

The rates sought and credentials for each attorney in this matter are set forth in the accompanying declarations and attached resumes, but Plaintiffs will briefly summarize the experience and work performed by the attorneys with the most time in the case.[11]  The hourly rate of the most senior Class Counsel ($625 per hour for William T. Payne) is amply justified by his nationally recognized expertise in this field.  Mr. Payne, a partner at FDPK with 30 years of experience, spent 70.10 hours in this case, primarily on strategic issues related to the claims asserted, class certification, responding to Gerdau's motion to dismiss, the initial mediation, discovery and settlement.  Hurt Decl. ¶ 18 and Ex. C.  Mr. Payne's ERISA experience is widely-recognized.  *Id.*, Ex. A pp. 11-12 (Payne resume).  The Sixth Circuit, after reviewing Mr. Payne's credentials in a similar retiree benefit case, observed:

> In view of Payne's background, both classes would have been hard pressed to find someone with greater "experience in handling class actions…and claims of the type asserted in the action" or an attorney with more "knowledge of the applicable law."

*UAW v. GM*, 479 F.3d 615, 628 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(g)(1)(C)(i)).

FDPK's rates for experienced partners ($550 per hour for Pamina Ewing and $530 per hour for Joel R. Hurt) are also reasonable.  Ms. Ewing, a partner at FDPK with over 25 years' experience, spent 132.71 hours litigating this case, including drafting the initial complaint, preparing and revising class certification filings, preparing the opposition to Gerdau's motion to dismiss, preparing Plaintiffs' motion to exclude Gerdau's retained expert's report, and the preparation of Plaintiffs' expert's rebuttal report.  Hurt Decl. ¶ 18 and Ex. C.  Ms. Ewing's significant ERISA class action experience is evidenced by the cases identified in her resume.  *Id.*, Ex. A pp. 12-13 (Ewing resume).   Mr. Hurt, a partner at FDPK with more than 16 years'

---

[11] Plaintiffs use counsel's current rates, as opposed to historical rates, to compensate for inflation and delay in payment.  *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988).

experience, spent 1,298.75 hours litigating nearly all aspects of this case, from pre-complaint investigation; preparation of the complaints; court filings related to case management and discovery disputes, Gerdau's motions to dismiss, and class certification; serving and responding to written discovery; defending and taking depositions; assisting with expert discovery; coordinating third party discovery with the union; preparing for and attending mediations and participating in direct settlement communications; and negotiating the settlement agreement and preparing related court filings.  *Id.* ¶ 18 and Ex. C.  As detailed in Mr. Hurt's resume (Hurt Dec., Ex. A pp. 13-15), he practices extensively in ERISA and employee benefits class action litigation and has played a significant role in approximately twenty retiree health class actions nationwide.

Additionally, the hourly rate for Class Counsel Ivelisse Berio LeBeau is reasonable.  Ms. LeBeau, a partner with the law firm Sugarman & Susskind, P.A., in Coral Gables, Florida, has practiced law for 26 years and has extensive ERISA and labor law experience representing labor unions and their members throughout Florida.  Ms. LeBeau's hourly rate of $450 is amply justified by her qualifications.  *See* Declaration of Ivelisse Berio LeBeau (filed herewith) at ¶ 1, 7 (citing approval of $450 hourly rate in the Middle District of Florida in 2012).  Ms. LeBeau has spent 18 hours litigating this case, primarily serving as local counsel.  *Id.* at 5.

Finally, Class Counsel's rate of $295 per hour for FDPK associate Ruairi McDonnell is reasonable.  Mr. McDonnell is a 2013 law school graduate who primarily works on the firm's retiree healthcare cases.  Hurt Decl., Ex. A at pp. 15-16 (McDonnell resume).  He served as the firm's primary associate assigned to the case and played a substantial role in preparing and responding to written discovery, defending and taking depositions, responding to Defendants' motions to dismiss, and assisting in the negotiation of the settlement.  He has spent 693.9 hours litigating the case.  *Id.* at ¶ 18 and Ex. C.

The reasonableness of Class Counsel's rates in light of their experience is further shown by prior decisions approving their rates as reasonable. *See Amos*, 2015 U.S. Dist. LEXIS 106944, at *29 (approving Class Counsel's prior rates in a retiree benefit class action settlement); Hurt Decl. Exhibit B (attaching orders from 13 additional cases approving Class Counsel's current and prior rates from 2006 to 2017). Additionally, Class Counsel's rates compare favorably with rates approved in ERISA cases across the country. *See Chesemore*, 2014 U.S. Dist. LEXIS 123873, at *20-21 (approving hourly rates between $395 and $895 as reasonable); *Beesley*, 2014 U.S. Dist. LEXIS 12037, at *11-12 (approving hourly rates between $394 and $892 as reasonable); *Tussey*, 2012 U.S. Dist. LEXIS 157428, at *14 (awarding blended rate of $514 for all attorneys); *In re Marsh ERISA Litigation*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (approving rates of up to $775 an hour for most senior lawyers); *Will v. General Dynamics Coro.*, 2010 U.S. Dist. LEXIS 123349, at *11 (S.D. Ill. Nov. 22, 2010) ($800 an hour reasonable for senior partners); *In re Merck & Co., Inc. Vytorin ERISA Litigation*, ERISA Litig., 2010 U.S. Dist. LEXIS 12344 at *44-46 (D. N.J. Feb. 9, 2010) (finding rates of up to $835 an hour to be reasonable for plaintiffs' counsel).

However, even if the Court disagrees that Class Counsel may properly recover their normal hourly rate for ERISA class action practice, Plaintiffs submit that Class Counsel's fee is nevertheless reasonable. Because Class Counsel request less only 60% of their lodestar, even if the Court cuts their requested rates by 40%, Class Counsel's fee request would still be reasonable and consistent with the rates of lawyers of reasonable comparable skills, experience and reputation in the Tampa area. Attorney Tucker opines that "in this District, the [requested] rates for attorneys with over 30 years and 15 to 25 years of experience in this type of work is reasonable with what other attorneys are charging. My view of the rate for attorneys with 3 years or less is that Plaintiff counsel's rate is slightly high for this District, with a rate of $225 to $250 being more in line with

what firms customarily charge for associates at that level." *See* Tucker Decl. at ¶ 17; *see also id.* at ¶ 14 ("Due to the specialized nature of retiree class representation, were I or any of the attorneys I know who practice in the Middle District to handle this type of case, I would expect a reasonable fee would be at least $525.00, the amount I charge as an hourly rate as an attorney with 25 years of experience handling ERISA cases.").  Applying the rates in Attorney Tucker's Declaration to counsel in this matter would result in a lodestar value that far exceeds the fee award Class Counsel is requesting here.  Indeed, the effective hourly rate sought by Class Counsel for their work in this matter is $262, which is eminently reasonable under either standard.  Hurt Decl. at ¶ 19.

When determining whether a fee is reasonable, the Court may consider the twelve factors identified in *Johnson v. Georgia Highway Exp.*, Inc., 488 F.2d 714 (5th Cir. 1974).  These factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 717-719.

Here, consideration of the relevant *Johnson* factors fully supports the reasonableness of the lodestar.  As explained above, the fifth and twelfth factors support the lodestar because Class Counsel's rates are customarily approved in other similar cases.  Furthermore, the second factor is particularly pertinent here because this case presented a "novel question" because the issue of whether collectively bargained retiree healthcare benefits had "vested" would be guided by the

Supreme Court's recent decision in *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015), a case with uncertain impact on existing Eleventh Circuit precedent on the issue of vesting.

The first factor also fully supports the reasonableness of the lodestar, as Class Counsel devoted 2,431 hours litigating the matter. *See North Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662, *6 (M.D. Fla. Jan. 10, 2011) (finding 2,314.1 total hours spent in preparing and presenting case over four years was reasonable, necessary, usual and customary). FDPK's itemized hourly time entries through June 2017 are attached as Exhibit C to the Hurt Declaration.[12] As explained in the Background section above, however, the action was vigorously litigated for over the course of several years. There were two rounds of briefing on Defendants' motions to dismiss, motion practice as to how discovery should proceed, extensive written discovery, more than 59,000 pages of documents produced, 23 depositions (seventeen of which were out-of-state and many which were noticed by Defendants in order to preserve witnesses' testimony for trial), expert and fact discovery related to complex bankruptcy issues presented in the case, and prolonged settlement negotiations. Still, the parties worked cooperatively when they could to minimize disputes in the matter. Through discussion and negotiation, the parties were able to reach agreement on numerous matters including, *inter alia*, amendments to the complaint to narrow the issues presented in Defendants' motion to dismiss, class certification including the

---

[12] In addition to time omitted in the exercise of billing judgment, Class Counsel's itemized time entries do not include 52.55 additional hours spent on preparing Plaintiffs' administrative claim and appeal. Hurt Decl. ¶ 20. Nor do the itemized time entries include the time spent preparing this motion for attorney's fees and reimbursement of expenses, or time class counsel will spend through the remainder of this litigation on additional communications with class members, preparing a brief in support of final approval of the settlement, responding to any objections to the settlement, and preparing for, traveling to, and attending the final fairness hearing. *Id.* Class counsel estimate they will spend an additional 60 hours of professional time between the filing of the fee motion and conclusion of the fairness hearing. *Id.* Class Counsel will submit updated time records to the Court if it so requests.

scope and definition of the class, and various discovery disputes that arose throughout the course of the litigation.  Hurt Decl. at ¶ 7.

The third and ninth factors further support the lodestar, as Class Counsel are highly skilled and experienced attorneys who brought that experience to bear in reaching resolution of this case. *See* Hurt Decl. at ¶ 13 and Ex. A (firm resume); LeBeau Decl. at ¶ 1; Dean Decl. at ¶ 15.  The sixth factor also supports the requested fee.   While not fully contingent, Class Counsel were compensated by the Union at significantly lower than market value "maintenance rates" of $135 an hour for attorney time and $55 an hour for staff time, and these rates will be repaid to the Union upon receipt of the fees and costs award.  Hurt Decl. ¶ 21; LeBeau Decl. ¶ 8.  *See also Temme v. Bemis Co., Inc.*, 762 F.3d 544, 549 (7th Cir. 2014) (approving market based fees under similar arrangement); *Bender v. Newell Window Furnishings, Inc.*, 560 Fed.Appx. 469, 473 (6th Cir. 2014) (same).

Most importantly, the result obtained here, a lifetime guarantee of medical and life insurance benefits the value of which will exceed $16 million, is a very favorable one in light of Gerdau's assertion that it reserved the right to terminate retiree insurance coverage in the operative collective bargaining agreements.   Thus, the eighth factor also weighs in favor of the reasonableness of the lodestar.[13]

### C.     Class Counsel's Costs and Expenses Should Be Awarded

Whether pursuant to the parties' agreement per Rule 23(h), or under ERISA's fees and costs shifting provision at 29 U.S.C. § 1132(g)(1), Plaintiffs are entitled to reimbursement of

---

[13] While Plaintiffs are not seeking an award of attorneys' fees under a percentage of common fund theory, courts often use such a percentage as a "cross-check" on the reasonableness of the lodestar submitted (or vice versa).  Here, the requested award of $635,757.50 in fees and $89,757.50 in litigation costs and expenses ($725,000 in total) represent approximately 4.4% of the more than $16 million in estimated total payments secured by the proposed settlement.  Hurt Decl. at ¶ 12.

litigation costs and expenses they reasonable expended in prosecuting the action.  *See, e.g., Martin*, 2016 WL 6996118, at \*4.  Here, Plaintiffs incurred litigation costs and expenses of $89,242.50 in litigating the case.  Hurt Decl. at ¶ 22, Ex. D; LeBeau Decl. at ¶ 10.  These costs and expenses are itemized in the Hurt and LeBeau Declarations and include court fees, deposition charges, expert fees, research, travel and hotel accommodations, and other expenses that were reasonably incurred in advancing the interests of the class.  Plaintiffs therefore respectfully request that this Court include reimbursement of $89,242.50 as part of their requested award.

**IV.    CONCLUSION**

Through expertise and hard work, Class Counsel has obtained considerable relief on behalf of the retirees they represent.  This result, reached after several years of vigorous litigation, merits the requested reward, particularly since the requested award of $725,000 represents a negative multiplier to Class Counsel's lodestar. Accordingly, Plaintiffs respectfully request that this Court award them reimbursement of their attorneys' fees, costs and expenses in the amount of $725,000.

<div style="margin-left:40%">

Respectfully submitted,

</div>

Dated:  July 27, 2017

<div style="margin-left:40%">

 s/ Joel R. Hurt
    Joel R. Hurt (*admitted pro hac vice*)

William T. Payne (*admitted pro hac vice*)
Pamina Ewing (*admitted pro hac vice*)
Ruairi McDonnell (*admitted pro hac vice*)
Feinstein Doyle Payne & Kravec, LLC
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA  15219
Telephone:  (412) 281-8400
Facsimile:  (412) 281-1007

Email:  jhurt@fdpklaw.com
          wpayne@fdpklaw.com
          pewing@fdpklaw.com
          rmcdonnell@fdpklaw.com

</div>

Ivelisse Berio LeBeau, Esquire
Florida Bar No. 0907693
Robert Sugarman, Esquire
Florida Bar No. 149388
*Counsel for Plaintiffs*
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: (305) 592-2801
Facsimile: (305) 447-8115
Email: Ivelisse@sugarmansusskind.com

**Counsel for Plaintiffs and the Class**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 27, 2017, a true and correct copy of the foregoing document was filed with the Clerk of Court, using the CM/ECF system, which will send notice of electronic filing and service to all counsel of record.

<u>  s/  Joel R. Hurt                        </u>
Joel R. Hurt