UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DANIEL L. COMER, GLEN HUBANKS, RICHARD D. SCOTT, OLIVER FRANK WRIGHT, JR. and STEPHEN SOLOMON, on behalf of themselves and all other persons similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>GERDAU AMERISTEEL US INC., and GERDAU AMERISTEEL US RETIREE MEDICAL PLAN,<br><br>              Defendants. | No. 8:14-cv-00607-SDM-EAJ<br><br>Class Action<br><br>**Demand for Jury Trial** |

### DECLARATION OF JOEL R. HURT IN SUPPORT OF
### PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

I, Joel R. Hurt, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am a partner with the law firm Feinstein Doyle Payne & Kravec, LLC ("FDPK"), representing the Plaintiffs and the certified class in this action. I was admitted *pro hac vice* in this matter on April 2, 2014. I am familiar with this action and the matters stated in this Declaration. This Declaration is submitted in support of Plaintiffs' Motion for Attorney's Fees, Costs and Expenses.

**Background**

2. The Court and parties agreed to bifurcate liability and damages issues in this action, with damages to be litigated only if Plaintiffs prevailed on the issue of liability. The parties served initial written discovery requests in 2014 prior to the stay of this action on

November 18, 2014.  After the stay of this action was dissolved on November 25, 2015, the Court permitted full discovery on liability issues by Order dated January 5, 2016, and the parties served new document requests and interrogatories and supplemented their initial disclosures and previous responses to the initial discovery served before the action was stayed.

3. Also in 2016, Defendants subpoenaed documents from the United Steelworkers and its Local 2741 (collectively, the "Union"), which had represented the retirees in the certified class when they were employed and negotiated the applicable labor contracts.  Defendants also subpoenaed documents from the attorney who represented the Union in a 2001-2002 bankruptcy proceeding.

4. In the course of discovery in this action, more than 59,000 pages of documents were produced by the parties, the Union and various other third parties.  The parties had also taken 23 depositions, seventeen of which took place out-of-state in Oklahoma, Arkansas, North Carolina, Nebraska and Pennsylvania, by the time they reached a settlement in principle on April 25, 2017.  Defendants noticed many depositions of its own out-of-state witnesses in order to preserve their testimony for trial.

5. The parties also conducted expert discovery.  Defendants served the expert report of attorney Harley Riedel on September 30, 2016, which addressed the legal effect of a 2001-2002 bankruptcy proceeding on retirees' healthcare benefits.  At the time the parties agreed to settle, Defendants were in the process of supplementing Mr. Riedel's expert report, and Plaintiffs had retained a rebuttal expert, former United States Bankruptcy Judge Judith Fitzgerald, who was in the process of preparing her rebuttal report.

6. The parties renewed settlement discussions in January 2017, and engaged in direct negotiations between mid-January and early April through a series of written proposals and

telephone calls. Although the parties had made significant progress and agreed to a number of key points, they decided to engage the services of a third party mediator to assist them in reaching a final deal. The parties participated in a mediation conference on April 25, 2017 with Cary Singletary serving as mediator, which resulted in the parties agreeing to a settlement in principle. After the mediation and subsequent discussions, the parties reached the terms of a final settlement as embodied in the Settlement Agreement executed on June 2, 2017. The parties' negotiations were extensive and arm's-length.

7. This matter was vigorously litigated over the course of several years. Nevertheless, the parties worked cooperatively when they could to minimize disputes in the matter. Through discussion and negotiation, the parties were able to reach agreement on numerous matters including, *inter alia*, amendments to the complaint to narrow the issues presented in Defendants' motion to dismiss, class certification including the scope and definition of the class, and various discovery disputes that arose throughout the course of the litigation.

**Settlement Valuation**

8. Using the census of class members that Defendants used for purposes of notice provided pursuant to the Class Action Fairness Act, I have computed the estimated value of the stream of payments secured by the settlement to be $16,492,116.91.

9. Using the Social Security Administration's life expectancy calculator (available at https://www.ssa.gov/oact/population/longevity.html), I calculated the remaining life expectancy of the living adult class members. I then determined the string of payments each would receive as their health care benefits under the settlement for their remaining life expectancy as follows:

- For class members who are age 65 or older, I used $1,800 as the annual amount they would receive under the settlement in 2017, and then increased that amount by 1.375% annually.

- For class members who are eligible for Medicare due to disability but have not yet reached age 65, I used $3,600 as the annual amount they would receive under the settlement in 2017, and then increased that by 1.375% annually. Once they would reach age 65, I reduced the annual amount they would receive to what post-65 class members would be receiving.

- For adult class members who have not reached age 65 and are not eligible for Medicare due to disability, I used $8,820 as the annual amount they would receive under the settlement until they reach age 65. Once they would reach age 65, I reduced the annual amount they would receive to what post-65 class members would be receiving.

In all cases, the annual amounts were prorated where the coverage period was less than a full calendar year.

10. For child dependent class members, I determined the stream of payments each would receive until they reached age 26. For this group, I used $8,820 as the annual amount they would receive under the settlement. Again, the annual amounts were prorated where the coverage period was less than a full calendar year.

11. There are four living class members who will not receive continuing health benefits under the settlement. These class members are two former spouses and two former child dependents who no longer meet the eligibility requirements for continuing coverage, either due to divorce or due to reaching age 65. These class members, along with the estates of all deceased

4

class members, will receive an equal share of the $225,000 lump sum payment provided by the settlement.

12. Using the methodology outlined above, I calculate the estimated healthcare payments living class members would receive under the settlement to be $14,992,616.91. In addition to the healthcare payments, the settlement obligates Gerdau to make a lump sum payment of $225,000 to be distributed equally to the class, to pay Class Counsel's fees, costs and expenses in the amount of $725,000, subject to approval by the Court, and to provide a life insurance benefit of $3,000 to all retirees in the class upon their death, but not to spouses, surviving spouses, or dependent children. I cannot tell the number of retirees from the class census provided by Defendants, so I have assumed that one-half of the living class members are retirees and one-half are spouses, surviving spouses, or dependent children. Using this methodology, I calculate the estimated life insurance payments to class members under the settlement to be $619,500. Adding these four components of settlement payments together results in an estimated $16,492,116.91 in total payments secured by the settlement. Class Counsel's requested award of fees, costs and expenses of $725,000 represents approximately 4.4% of this total.

### Class Counsel's Experience with Retiree Benefit Litigation

13. Class Counsel have extensive experience litigating retiree benefit class actions. FDPK was founded in 2007 by experienced employee benefit class action litigators William T. Payne, Edward J. Feinstein and Ellen M. Doyle. FDPK is well known throughout the country for litigating retiree benefit class actions such as this action. Exhibit A hereto is the firm biography of FDPK, which includes the individual biographies of myself, William T. Payne, Pamina Ewing, Ruairi McDonnell, Robert ("Sam") Stein, and former FDPK partner Stephen Pincus.

14. I am aware of only three other class actions under the LMRA and ERISA for collectively bargained retiree healthcare benefits having been litigated in the Eleventh Circuit, none of which were litigated in the Middle District of Florida: *United Steelworkers v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988) (Northern District of Alabama); *Stewart v. KHD Deutz of Am. Corp.*, 980 F.2d 698 (11th Cir. 1993) (Northern District of Georgia); *Groover v. Michelin N. Am.*, 90 F.Supp.2d 1236 (N.D. Ala. 2000)). Plaintiffs' counsel William Payne also served as one of plaintiffs' counsel in the *Connors Steel* case, which was filed more than 30 years ago.

15. Exhibit B includes the following orders in which FPDK has been awarded fees in ERISA class actions and in which the court found the firm's fees based on its then-customary hourly rates to be reasonable: *Fleming v. Unilever United States, Inc.*, 1:14-cv-061117 (N.D. Ill. April 21, 2017); *Dame v. Neenah Paper Inc.*, 4:16-40029-TSH (D. Mass. Feb. 2, 2017); *Merrill v. Briggs & Stratton Corporation*, 2:10-cv-00700 (E.D. Wis. Aug. 11, 2016) (at ¶19); *Zanghi v. FreightCar America, Inc.*, 3:13-CV-00146 (W.D. Pa. January 19, 2016) (at ¶45); *Society of Professional Engineering Employees in Aerospace, IFPTE Local 2001 v. The Boeing Company, Inc.*, 6:05-cv-01251 (D. Kan. Sep. 3, 2015) (at ¶27); *Sowers v. FreightCar America, Inc.*, 3:07-cv-201 (W.D. Pa. Nov. 20, 2008); *Leonhardt v. ArvinMeritor, Inc.*, No. 2:04-cv-72845 (E.D. Mich. Oct. 7, 2008); *UAW v. General Motors Corp.*, 2:07-cv-14074 (E.D. Mich. July 31, 2008); *UAW v. Ford Motor Co.*, 2:07-CV-14845 (E.D. Mich. July 7, 2008); *UAW v. Chrysler, LLC*, 2:07-cv-14310 (E.D. Mich. May 16, 2008); *UAW v. Ford Motor Co.*, 2:05-cv-74730 (E.D. Mich. Dec. 27, 2007); *UAW v. General Motors Corp.*, 2:05-cv-73991 (E.D. Mich. Sept. 26, 2007); *In re ASARCO, LLC*, No. 05-21207 (S.D. Tex. March 16, 2007); *Santos v. Pechiney*, No. C 05-00149 (N.D. Cal. July 7, 2006). The court also found the firm's fees based on its then-customary

6

hourly rates to be reasonable in *Amos v. PPG Indus.*, 2015 U.S. Dist. LEXIS 106944, at *28 (S.D. Ohio Aug. 13, 2015).

16.     In addition to the orders included in Exhibit B, FDPK has filed fee petitions in additional ERISA class actions between 2008 and the present based on the firm's then-existing customary hourly rates ranging from $220 an hour for first year attorneys and $575 an hour for senior partners.  In these cases, the courts found the requested fees were reasonable and granted the fee motion, but did not make a specific finding as to the attorneys' rates.  *See Crocker v. KV Pharmaceutical*, 4:09-cv-00198 (E.D. Mo. April 24, 2012) (order at Doc. # 173; fee request at Doc. # 169 and #164-1); *Szogedi v. Handy & Harman*, Case No. 09-292 (D. Conn. Dec. 1, 2009) (order at Doc. #36; petition and rates at Doc. #32); *Moore v. Rohm & Haas*, Case No. 03-1342 (N.D. Ohio July 10, 2009) (order at Doc. #226; petition and rates at Doc. #219-1); *Pringle v. Continental Tire North America*, 3:06-cv-2985 (N.D. Ohio Sept. 30, 2008) (order at Doc. #164; petition and rates at Doc. #137, #138); *Lawhorn v. Crown Cork & Seal Co., Inc.*, 1:03-cv-461 (S.D. Ohio July 21, 2008) (order at Doc. #88; petition and rates at Doc. #178).

## **FDPK'S FEES, COSTS AND EXPENSES IN THIS MATTER**

17.     FDPK kept contemporaneous time records throughout the prosecution of this case.  These records of FDPK's attorney and paralegal time in this case through June, 2017 are attached hereto as Exhibit C.

18.     The chart below summarizes the time for work performed by FDPK lawyers and paralegals in pursuing the claims of Plaintiffs and the class through June 2017:

| Name | Position | Hours | Rate | Amount |
|---|---|---|---|---|
| Adoh, Abel | Paralegal | 172.50 | $160 | $27,600.00 |
| Ewing, Pamina | Partner | 132.71 | $550 | $72,990.50 |
| Hurt, Joel | Partner | 1,298.75 | $530 | $688,337.50 |
| McDonnell, Ruairi | Associate | 693.90 | $295 | $204,700.50 |
| Payne, William | Partner | 70.10 | $625 | $43,812.50 |
| Pincus, Stephen | Partner | 29.50 | $525 | $15,487.50 |
| Stein, Sam | Associate | 13.40 | $285 | $3,819.00 |
| **Total** | | **2,410.86** | | **$1,056,747.50** |

19.     Combining FDPK's 2,410.86 hours with Sugarman & Susskind's 21 hours results in a total of 2,431.86 hours for Class Counsel in the case. When Class Counsel's requested fee of $635,757.50 is divided by $2,432.86, it yields an effective hourly rate of $261.43 for Class Counsel's work in this matter.

20.     In addition to time omitted in the exercise of billing judgment, Class Counsel's itemized time entries (as summarized in the above chart) do not include 52.55 additional hours spent on preparing Plaintiffs' administrative claim and appeal pursuant to the Court's November 18, 2014 Order. Nor do the itemized time entries include the time spent preparing this motion for attorney's fees and reimbursement of expenses, or time FDPK attorneys will spend through the remainder of this litigation on additional communications with class members, preparing a brief in support of final approval of the settlement, responding to any objections to the settlement, and preparing for, traveling to, and attending the final fairness hearing. Based on their most recent similar settlement, Class Counsel estimate they will spend an additional 60 hours of professional time between the filing of the fee motion and conclusion of the fairness hearing.

21. Throughout this case, FDPK has been compensated by the Union at rates of $135 per attorney hour and $55 for staff hour. These are far lower than either normal market rates of FDPK's normal hourly rates. FDPK will reimburse the Union upon an award of fees and costs.

22. FDPK's expenses and costs incurred in this case through July 12, 2017 are attached hereto as Exhibit D and are summarized in the chart below. In addition to these expenses, FDPK will incur additional expenses in traveling to Tampa to attend the Fairness Hearing on September 11, 2017.

| Expense | Amount |
|---|---|
| Conference Calls | $267.92 |
| Copying | $5,152.28 |
| Court Fees | $836.50 |
| Deposition Charges | $27,723.84 |
| ESI Services | $423.11 |
| Expert | $15,945.00 |
| Mediation | $3,162.50 |
| Messenger | $13.63 |
| Internet Service Fee | $8.00 |
| Outside Copying | $248.09 |
| Overnight Delivery | $4,361.12 |
| PACER | $156.93 |
| Postage | $221.54 |
| Scanned Pages | $503.57 |
| Travel – Airfare | $14,646.05 |
| Travel – Auto | $4,281.96 |
| Travel – Hotel | $6,598.87 |
| Travel – Meals | $2,768.10 |
| Westlaw | $1,496.64 |
| **Total** | **$88,815.65** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 27, 2017                                         _____s/ Joel R. Hurt_____

9

Joel R. Hurt

Joel R. Hurt