# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VIRGIL FLEMING and RICHARD GAWLIK, on behalf of themselves, ROY WESSON, CARL F. WOODALL, and ALFONSO SAVAGE, on behalf of themselves and all other persons similarly situated, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC LOCAL 6-0507,<br><br>               Plaintiffs,<br><br>    v.<br><br>UNILEVER UNITED STATES, INC., a Delaware corporation registered as a foreign corporation qualified to do business in Illinois, CONOPCO, INC., a New York corporation, HEALTH AND WELFARE PLAN FOR HOURLY RETIREES OF UNILEVER, and UNILEVER UNION RETIREE REIMBURSEMENT ACCOUNT (RRA) PLAN,<br><br>               Defendants. | C.A. No. 1:14-cv-06117<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge M. David Weisman |

**ORDER GRANTING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES**

The Court grants Plaintiffs' Motion for Award of Attorneys' Fees, Costs and Expenses.

The Court hereby orders as follows:

1.     A rate of $625 per hour is reasonable for William T. Payne.

2.     A rate of $550 per hour is reasonable for Pamina Ewing.

3.     A rate of $530 per hour is reasonable for Joel R. Hurt.

4.      A rate of $350 per hour is reasonable for Robert A. Seltzer.

5.      A rate of $170 per hour is reasonable for Elisa Redish.

6.      A rate of $295 per hour is reasonable for Ruairi McDonnell.

7.      Pursuant to the terms of the Settlement Agreement at Dkt #98-01, no later than

fourteen (14) days following Final Settlement Approval, Defendants shall disburse to Class

Counsel the amount of $287,000.


DATE:  <u>June 6, 2017</u>                                    By the Court:

                                                            _____
                                                            Sharon Johnson Coleman
                                                            United States District Judge

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## WORCESTER DIVISION

| | |
|---|---|
| DONALD DAME, PAUL OKERMAN, RICHARD RUSHFORD, RUDOLPH SUNDSTROM and JOSEPH THIBODEAU, *on behalf of themselves and all other persons Similarly Situated;* and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, | CIVIL ACTION NO.: 4:16-40029-TSH |
| *Plaintiffs,* | |
| v. | |
| NEENAH PAPER, INC., FIBERMARK NORTH AMERICA, INC., CROCKER TECHNICAL PAPERS, INC., WELFARE BENEFIT PLAN FOR HOURLY RETIREES, | |
| *Defendants.* | |

## ORDER GRANTING CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES

Currently before the Court is Class Counsel's Motion for Award of Attorneys' Fees, Litigation Costs and Expenses. The Court hereby orders as follows:

1.    Class Counsel's Motion for Award of Attorneys' Fees, Litigation Costs and Expenses is hereby GRANTED;

2.    A rate of $625 per hour is reasonable for William T. Payne;

3.    A rate of $550 per hour is reasonable for Pamina Ewing;

4.    A rate of $530 per hour is reasonable for Joel R. Hurt;

5.    A rate of $350 per hour is reasonable for Terence E. Coles;

6.       A rate of $375 per hour is reasonable for McKean J. Evans;

7.       No later than fourteen (14) days following Final Settlement Approval,[1] Neenah

Northeast shall disburse to Plaintiffs' Counsel the amount of $75,000.00.

**So Ordered.**

Dated: _____, 2017

_____
Timothy S. Hillman
United States District Judge

---

[1] Capitalized terms herein shall have the same meaning as defined in the Stipulation of Settlement (Dkt. No. 47-1) unless otherwise specified.

2

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| MICHAEL MERRILL, GREGORY WEBER, JEFFREY CARPENTER on behalf of themselves and all other persons similarly situated; and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, | Case No.  10-C-0700-LA |
| Plaintiffs, | |
| v. | |
| BRIGGS & STRATTON CORPORATION; GROUP INSURANCE PLAN OF BRIGGS & STRATTON CORPORATION, and DOES 1 THROUGH 20, | |
| Defendants. | |

**FINAL ORDER APPROVING CLASS SETTLEMENT**

Plaintiffs Michael Merrill, Gregory Weber, and Jeffrey Carpenter, on behalf of the

Classes certified by this Court by Order dated October 9, 2012, and Plaintiff the United Steel,

Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union ("Union"), and Defendants Briggs & Stratton Corporation and the Group

Insurance Plan of Briggs & Stratton Corporation (hereinafter "Briggs") entered into a proposed

Settlement embodied in a stipulation of settlement ("Settlement Agreement").[1]  On April 22,

2016, the Court preliminarily approved the Settlement and ordered that notice be sent to all Class

Members.  A fairness hearing was held on August 11, 2016.

Now before the Court is Plaintiffs' motion for final approval of the Settlement.  The

---

[1] All terms herein shall have the same meaning as used in the Settlement Agreement.

Court having reviewed and considered the Settlement Agreement, the Plan of Allocation, and

Class Counsel's Petition for Attorneys' Fees, as well as the motions and other submissions of the

parties, **IT IS HEREBY ORDERED AND ADJUDGED:**

      1.      On October 9, 2012, the Court granted the Unopposed Motion for Class

Certification, certifying the following two classes:

      a.      Class 1:  Former employees of the Company who were represented by
the USW (or its predecessors) and who: (i) were hired by the Company prior to
1980; (ii) prior to reaching age 65 retired from a Milwaukee area facility
operated by the Company between August 1, 2000 and August 1, 2006, with at
least 30 years of service; (iii) had not reached age 65 prior to August 1, 2010;
(iv) received health insurance benefits under one or more plans sponsored by the
Company after retirement (or retained the right to opt in to said plans under plan
rules as they existed prior to August 1, 2006); and (v) claim under Section
502(a)(1)(B) of ERISA and Section 301 of the LMRA that, under the terms of
the governing collective bargaining agreements and plan documents, they are
entitled to be provided unalterable post-retirement medical benefits at the same
levels and for the same duration as when they retired ("Class No. 1").

      b.      Class 2:  Former employees of the Company who were represented by the
USW (or its predecessors) and who: (i) prior to reaching age 65 and prior to
August 1, 2006 retired from a Milwaukee area facility operated by the Company
by reason of permanent and total disability with more than 10 but less than 30
years of service; (ii) had not reached age 65 prior to August 1, 2010; (iii) received
health insurance benefits under one or more plans sponsored by the Company
after retirement (or retained the right to opt in to said plans under plan rules as
they existed prior to August 1, 2006); and (iv) claim under Section 502(a)(1)(B)
of ERISA and Section 301 of the LMRA that under the terms of the governing
collective bargaining agreements and plan documents, they are entitled to be
provided unalterable post-retirement medical benefits at the same levels and for
the same duration as when they retired ("Class No. 2").

This Court now finally approves the certification of the two Classes and the Settlement for them

as more fully set forth below.

      2.      Under Federal Rule of Civil Procedure 23(e)(2), a court may approve a settlement

in class action litigation only if it finds that the settlement is "fair, reasonable and adequate."  In

order to evaluate the fairness of a settlement, the court must consider "(1) the strength of the case

for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed."  Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014).

      3.     The first factor – the strength of the plaintiffs' case compared to the value of the settlement – is the most important. Id. at 863-64.  While the parties remained convinced of their respective positions, they also recognized the inherent risks of continuing to advance those positions in litigation.  This Court denied both parties' cross-motions for summary judgment, finding the collective bargaining agreements (CBAs) ambiguous and writing that "[s]orting through these types of factual disputes is a job for the fact finder, precluding summary judgment. Thus, plaintiffs are entitled to a trial on the question of whether or not their benefits vested under the CBAs."  2015 WL 5172943 at *9.  This Court also held for trial "the issue of whether the 2010 and subsequent changes are reasonably commensurate with the pre-2006 benefits." Id. at *10.  This Court also denied the parties' cross motions to strike their respective experts, writing that "[w]hether the benchmarks and assumptions the experts used in their analyses are reliable is a jury question." Id. at *5.   Under these circumstances it was reasonable for Plaintiffs to settle for approximately 1/2 of the monetary relief requested through litigation because all merits issues were reserved for trial.  This Court bifurcated the trial between merits and damages by order dated June 10, 2014 (Doc. #105).  In ERISA/LMRA actions, there is no possibility for punitive or exemplary damages.

      4.     The Settlement also provides for the continuation of benefits to retirees as set forth in Section 10 of the Settlement Agreement.

a.      More specifically, Defendants have agreed that, in the year 2016, they will make

no changes to the medical, dental, or vision benefits provided to Class members

other than changes that were announced prior to December 15, 2015.

b.      Defendants have agreed that they will provide to members of Class No. 1 who

have not attained age 65 but have already exhausted ten (10) years of Company-

paid medical benefits since their dates of retirement, a choice of two medical

insurance arrangements until those retirees reach age 65: (i) a preferred provider

plan and (ii) a high-deductible plan.  Both plans will be provided to these Class

No. 1 members under the same cost-sharing arrangements that are in place as of

January 1, 2016, copies of which are attached as Exhibit A (2016 Benefits at a

Glance) and Exhibit B (2016 premium cost sharing) to this Order, subject to an

annual cap to the Company's contribution toward the cost of the selected option

of these two medical insurance arrangements of $12,000 for single coverage and

$24,000 for family coverage (coverage that is not single).  As a result, if these

annual limits are reached, these Class No. 1 members will be required to pay the

difference between the annual limits and the costs incurred in equal monthly

installments over a twelve month period. Defendants further agreed to provide to

these Class No. 1 members dental and vision benefits under the same cost-sharing

arrangement that is in place as of January 1, 2016.

c.      Defendants have further agreed that they will provide to members of Class No. 2

who have not attained age 65 the choice of two medical insurance arrangements

until those retirees reach age 65:  (i) a preferred provider plan and (ii) a high-

deductible plan.  Both plans will be provided to these Class No. 2 members under

4

the same cost-sharing arrangements that are in place as of January 1, 2016, copies of which are attached as Exhibit A (2016 Benefits at a Glance) to this Order, subject to an annual cap to the Company's contribution toward the cost of the selected option of these two medical insurance arrangements of $12,000 for single coverage and $24,000 for family coverage (coverage that is not single). As a result, if these annual limits are reached, these Class No. 2 members will be required to pay the difference between the annual limits and the costs incurred, in equal monthly installments over a twelve month period. Defendants further agree to provide to these Class No. 2 members dental and vision plans under the same cost-sharing arrangement that is in place as of January 1, 2016.

d.      For those former employees who retired prior to October 29, 1983, who were represented by the USW predecessors, and who retired from a Milwaukee area facility operated by the Company prior to October 29, 1983 by reason of permanent and total disability with more than 10 years of service and received health insurance benefits under one or more plans sponsored by the Company after retirement (or retained the right to opt in to said plans), Defendants will continue to provide the above two medical insurance arrangements as provided in Paragraph 10.3 of the Settlement Agreement, for the lifetimes of those retirees rather than to age 65, under the same cost-sharing arrangement that is in place as of January 1, 2016, but nothing in this Paragraph shall preclude the Company from offering this limited group of retirees additional medical insurance alternatives at any time.

5.      This Court finds that the relief attained for the Class under the Settlement is well

5

within the range of reasonableness in light of the risks of continuing litigation through the bifurcated trial and on appeal.  It provides both for past monetary compensation and for some continuation of benefits for the future.

6.      This Court is well aware of the likely complexity, length, and expense of continued litigation.  The parties have devoted substantial resources to this litigation already.  At the time they settled, with the assistance of an experienced mediator, they had fully briefed the merits in their cross motions for summary judgment.  They had retained experts and were facing two bifurcated trials with the likelihood of appeals.  Consideration of the status of the litigation mitigates in favor of approval of the settlement, particularly where, as here, many of the Class members were elderly, retired and/or disabled.

7.      There was no opposition to the Settlement.  Of approximately 1,051 class members, 0 objected.

8.      The parties were well-represented by highly experienced counsel with class and complex litigation experience and specific experience related to collectively bargained retiree health benefits claims.  Counsel have represented to this Court that they recommend the fairness of the settlement.   Consideration of this factor weighs in support of the fairness of the Settlement.

9.      Finally, this Court further recognizes that the stage of the proceedings, i.e., completion of merits discovery, and this Court's denial of the parties' cross-motions for summary judgment, also supports the fairness of the Settlement.  The parties had grappled with each other's merits arguments in the summary judgment briefing.  They had completed merits fact and expert discovery.  The parties were well-poised to assess the value of the claims and

defenses.  They retained a highly qualified ERISA lawyer as their private mediator to assist them in negotiating the Settlement.

10.     Accordingly, the Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as constituting a fair, reasonable, and adequate settlement and compromise of this action in accordance with applicable law, including Fed. R. Civ. P. 23, and orders that the Settlement Agreement shall be effective, binding, and enforced according to its terms and conditions.

11.     Notice, in the form previously approved by the Court, was sent to the last known addresses of all members of the Class and reasonable efforts were made to re-send notices to those Class members whose notices were returned as undeliverable.  The Notice constitutes the best notice practicable under the circumstances and fully complies with and satisfies the notice requirements of Federal Rule of Civil Procedure 23, due process, the United States Constitution, and applicable law.  The Court determines that the Notice reasonably apprised the Class members of the nature and pendency of this lawsuit and the claims made herein; the class definitions; the material elements of the proposed settlement, the binding effect of the settlement; class members' right to object to the proposed settlement, along with information regarding the time and manner for doing so; the date, time, and location of the final fairness hearing; the Class members' right to appear at the fairness hearing (including through an attorney) and speak regarding the proposed settlement; and the identity of Plaintiffs' counsel and how to contact them with any questions.  Full opportunity has been afforded to Class members to be heard and to participate in the fairness hearing.

12.     Pursuant to the Settlement Agreement, the total payment by Defendants is $3,950,000.00 (hereinafter "Settlement Fund").  Plaintiffs propose first that the Settlement

7

Administrator deduct from the total Settlement Fund the expenses of litigation and administration as follows:

    a.      The total payment by Defendants is $3,950,000.00.

    b.      From that amount, litigation costs and expenses will be deducted.  These costs totaled $126,667.15 as of May 31, 2016.  Plaintiffs' counsel now seek reimbursement of their litigation costs and expenses.

    c.      The costs of a Settlement Administrator and settlement administrative costs including taxes and tax-related expenses, will also be deducted.  These include costs of any searches for missing Class members; costs of analyzing the individual out-of-pocket claims data through July 2016 for purposes of calculating individual participant distribution; costs of distribution of settlement checks; and costs of tax work to be performed.  The cost of the Settlement Administrator, settlement administration, and taxes and related expenses is estimated not to be above $38,000.

    d.      Attorneys' fees will also be deducted from the settlement payment.  The lodestar calculation of Plaintiffs' attorney fees (reasonable number of hours multiplied by reasonable hourly rate) prior to December 15, 2015 was $1,372,114.50.  Plaintiffs' counsel have agreed to petition the Court for 1/2 of lodestar calculation of the value of their services up to the date of mediation, that is $686,057.25.  Plaintiffs' counsel have spent additional professional time since December 14, 2015, with a total lodestar value of $104,063.50, but are not seeking additional fees.

    e.      The remaining funds estimated at $3,099,275.60, the "Net Settlement Fund," will reimburse individual Class members for the out-of-pocket and 2010 premium expenses they incurred as documented in the data provided by Defendants pursuant to the following formula:

        (i) $73,750 will be divided among the 32 participants who paid premiums in 2010 in accordance with their respective shares of the premiums. $73,750 represents 1/2 the amount these participants together paid to retain their coverage.

        (ii) 5% of the Net Settlement Fund (minus the $73,750 described in (i)), approximately $151,276.28, shall be divided among the members of Class #2 who are alive as of July 31, 2016, and are still participants in the Briggs retiree medical plan based on the number of months after July 31, 2016 that they could remain covered by Briggs' medical plan until they reach age 65.

8

(iii) 10% of the Net Settlement Fund (minus the $73,750 described in (i)) approximately $302,552.56, shall be distributed equally among Class members based on the number of months he/she was in the Class after July 31, 2010 and before August 1, 2016 and therefore was subject to the reductions in vision, dental and hearing aid benefits.

(iv) The remainder of the Net Settlement, approximately $2,571,696.76, will be distributed so that each individual Class member's portion is based on a calculation of the ratio of his or her out-of-pocket costs for medical services under the Briggs Medical Plan for himself or herself and his or her dependents from January 1, 2011 to July 31, 2016 to the total out-of-pocket costs for all Class #1 and Class #2 members over that time frame.

The Court hereby approves the Plan of Allocation as fair and reasonable.

13.     The parties have complied with the requirements of the Class Action Fairness Act.

14.     Under this Final Approval Order and after payment by Defendants of the Settlement Amount as defined in paragraph 6.1 of the Settlement Agreement, and expiration of the time for termination of the Settlement Agreement under paragraph 11.1 of the Settlement, Plaintiffs and all Class Members irrevocably, absolutely, unconditionally, fully, finally, and forever release, acquit, and discharge the Defendant Released Parties from Released Claims (as defined in Paragraph 5.2 of the Settlement) that such persons or entities directly, indirectly, derivatively, or in any other capacity ever had or have based upon, related to, arising out of or in connection with the claims and allegations asserted in the Complaint. This Release shall not release any claims relating to the covenants or obligations set forth in this Settlement Agreement; shall not include any individual claims for benefits arising in the ordinary course under the relevant plan documents or ERISA; and shall not purport to release claims for or related to persons who are not Plaintiffs or Class Members. Without limiting the foregoing, upon Final Settlement Approval, Plaintiffs and all Class Members shall be deemed to have irrevocably, absolutely, and unconditionally waived any and all rights to (i) receive with regard to the

9

Released Claims any consideration in excess of that portion of the Net Settlement Amount that shall be allocated and payable to or for the benefit of such Class members in accordance with the terms and provisions of the Plan of Allocation; (ii) seek relief against the Defendant Released Parties in the Action or with respect to claims that were asserted or could have been asserted in the Action beyond that provided in this Settlement Agreement; and (iii) file any such claims in any court or adjudicatory forum.

15.     Subject to Paragraph 5.1 of the Settlement Agreement, the "Released Claims" shall be any and all claims, demands, rights or causes of action of any and every kind, character or nature whatsoever (including, but not limited to, claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief whether accrued or not, whether known or unknown in law or equity brought by way of demand, complaint, cross-claim, counterclaim, third-party claim or otherwise, arising out of any or all of the acts, omissions, facts, matters, transactions or occurrences that are, were or could have been alleged, asserted, or set forth in the Complaint or the Action, or that are related in any way to any of the allegations or claims asserted in the Complaint or the Action, including but not limited to claims that Defendants violated collective bargaining agreements, the Plan, any other agreements, the LMRA, ERISA, or any other law in connection with the modification of medical benefits the Company has provided or continues to provide to the Class members arising on or before  January 1, 2016).   Released Claims shall not include any claims relating to the covenants or obligations set forth in this Settlement Agreement; shall not include any individual claims for benefits arising in the ordinary course under the relevant plan documents or ERISA; and shall not purport to release claims for or related to persons who are not Plaintiffs or Class Members.

10

16.     Under the Settlement, the Parties stipulate and agree that, upon Final Settlement

Approval (as defined in the Settlement Agreement), Plaintiffs expressly waive and relinquish, to

the fullest extent permitted by law, any and all provisions, rights and benefits conferred by: (i)

California Civil Code § 1542, which provides that a "general release does not extend to claims

which the creditor does not know or suspect to exist in his or her favor at the time of executing

the release, which if known by him or her must have materially affected his settlement with the

debtor," or (ii) any similar state, federal, or other law, rule or regulation or principle of common

law of any domestic or foreign governmental entity.  Plaintiffs may hereafter discover facts other

than or different from those that they know or believe to be true with respect to the subject matter

of the Released Claims with respect to any Released Parties, but Plaintiffs hereby expressly

waive and fully, finally and forever settle and release any known or unknown, suspected or

unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the

Released Claims, without regard to the subsequent discovery or existence of such other or

different facts.

17.     Upon Final Settlement Approval, Defendants absolutely and unconditionally

release and forever discharge the Plaintiff Released Parties from any and all claims relating to

the institution or prosecution of the Action or the settlement of any Released Claims, except that

this release shall not include any claims relating to the covenants or obligations set forth in this

Settlement Agreement.

18.     The Court specifically approves the following payments from the Settlement

Fund:

        a.      The reimbursement to Class Counsel of their litigation expenses
        and costs in the amount of $126,667.15; and

        b.      Payment of settlement administration expenses, as provided in

11

Paragraph 7.3 of the Settlement Agreement, in the amount of $38,000.000.

19.     Class Counsel have filed a petition for an award of attorneys' fees to them in the amount of $686,057.25.  As part of the Settlement, Defendants agreed not to dispute the award of attorneys' fees in that amount.  This Court has considered the requested fees both in light of the value of the relief obtained for the Class and in light of the lodestar of Class Counsel in obtaining such relief.  This Court finds that Class Counsel have achieved more than some degree of success on the merits, as that phrase is described in <u>Hardt v. Reliance Standard Life Insurance Co.</u>, 560 U.S. 242, 245 (2010). They have obtained a substantial monetary award combined with continued benefits for the future.  The requested fee amount of $686,057.25 constitutes 17.4% of the Settlement Fund, and is consistent with fees awarded as a percentage of the fund in other matters by the Seventh Circuit including in <u>Florin v. Nationsbank of Georgia, N.A.</u>, 34 F.3d 560, 562 (7th Cir. 1994) (18.45% of the fund); <u>Williams v. Rohm and Haas Pension Plan</u>, 658 F.3d 629, 633 (7th Cir. 2011) (24.17% of the fund), and <u>Silverman v. Motorola Solutions, Inc.</u>, 739 F.3d 956, 958 (7th Cir. 2013) (27.5% of the settlement fund).  A fee of 17.4% of the Settlement Fund is fair and reasonable.  Class Counsel provided fee records information to the Court that show that their requested fees are for less than 50% of the lodestar value of their professional time.  This lodestar check further supports the requested award of $686,057.25.

20.     This Court retains exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of the Settlement.

21.     The Court hereby dismisses the Complaint and the Action against

12

Defendants with prejudice on the merits.

Dated:  August 11, 2016

s/ Lynn Adelman

_____

Lynn Adelman
United States District Judge

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## JOHNSTOWN DIVISION

| | |
|---|---|
| ANTHONY J. ZANGHI, *et al.*, | No. 3:13-CV-00146 |
| Plaintiffs, | Hon. Kim R. Gibson |
| v. | |
| FREIGHTCAR AMERICA, INC., *et al.*, | |
| Defendants. | |

### ~~[PROPOSED]~~ FINAL ORDER AND JUDGMENT

Based on the Court's review of the pertinent files, records, and proceedings in this matter, including the evidence and testimony offered at the hearing held January 5, 2016, the Court enters the following Order and Final Judgment pursuant to the terms of a Class Action Settlement Agreement dated September 22, 2015, which is binding upon and inures to the benefit of Plaintiffs Anthony J. Zanghi, Kenneth J. Sowers,  Dominic McCuch, James Hohman, and Darrell Shetler, individually and as representatives of the Plaintiff Class (collectively, "Class Representatives"), Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("Union"), each of the Defendants (collectively, "FCA"), and the Class described below.  To the extent not otherwise expressly defined herein, all capitalized terms shall have the same meaning as used in the Settlement Agreement.

IT IS HEREBY ORDERED AND ADJUDGED:

1.      The underlying dispute in this matter began in 2002, when FCA ceased paying for healthcare and life insurance benefits for some former employees.  Three previous lawsuits were

1

filed, with each reaching a settlement agreement, before Plaintiffs brought this action in 2013.

Plaintiffs claim that FCA's conduct violated Section 502(a)(1)(B) of the Employee Retirement

Income Security Act of 1973, 29 U.S.C.§ 1132(a)(1)(B), and Section 301 of the Labor

Management Relations Act of 1947, 29 U.S.C. § 185. Plaintiffs have alleged that a continuation

of coverage provision in a benefits plan provided by a predecessor to FCA created vested

lifetime benefits. Defendants deny this, claiming that the continuation of coverage provision was

insufficiently clear to vest lifetime benefits.

2.    On September 28, 2015, this Court certified the Class for settlement purposes to

include:

> (a) former FreightCar employees that were represented by the
> USW at the time of their retirement from FreightCar, and who
> upon retirement received or were eligible to receive medical and
> life insurance benefits under the JAC USWA Health and Welfare
> Plan (the "Plan"); and (b) those individuals who received or were
> eligible to receive medical and life insurance benefits under the
> Plan as a spouse, surviving spouse, or dependent of an
> aforementioned former FreightCar employee.

3.    The Court has jurisdiction over the subject matter of this action and over all

parties to the action and the Settlement Agreement, including all members of the Class.

4.    On September 28, 2015, this Court entered an order granting preliminary approval

(the "Preliminary Approval Order") of the settlement memorialized in the parties' proposed

Settlement Agreement dated September 22, 2015 ("Settlement Agreement"), and approving the

form of Class Notice and directing the manner of delivery. See Dkt. #240.

5.    The Court finds that in accordance with the Preliminary Approval Order, Class

Notice was timely distributed by first-class mail to all members of the Class who could be

identified with reasonable effort. In addition, pursuant to the Class Action Fairness Act, 29

U.S.C. § 1711, et seq., notice was provided to the Attorneys General for each of the states in

2

which a Settlement Class Member resides, the Attorney General of the United States, and the United States Secretary of Labor.

6.      The Court determines that the Class Notice transmitted to the Class Members pursuant to the Preliminary Approval Order and the Settlement Agreement constituted the best notice practicable under the circumstances and provided individual notice to all members of the Class who could be identified through reasonable efforts. The Class Notice provides valid, adequate, and sufficient notice of, among other things, these proceedings, and the settlement to all persons entitled to such notice. Such notice has fully satisfied the prerequisites and requirements of Fed. R. Civ. P. 23, due process, and any other applicable law. In addition, all requirements of the Class Action Fairness Act, 29 U.S.C. § 1711, *et seq.*, have been met.

7.      Under the proposed settlement and as described in the Class Notice, three types of benefit will be provided to Class Members through a voluntary employees' beneficiary association, or VEBA. The VEBA will provide reimbursement up to certain amounts for expended healthcare costs (available to class member retirees and surviving spouses); a death benefit (paid to surviving spouses or other designated beneficiary upon the death of retiree); and health insurance (available to all class members).

8.      The maximum amount of reimbursement that retirees and surviving spouses can receive depends on whether they were eligible for Medicare during the 29-month period beginning November 1, 2013 and ending March 31, 2016. Retirees and surviving spouses who were not eligible for Medicare before March 31, 2016 can receive reimbursement of up to $6,728. Retirees and surviving spouses who were eligible for Medicare during the entire 29-month period beginning November 1, 2013 and ending March 31, 2016 can receive up to $2,349 in reimbursement. Retirees and surviving spouses who were eligible for Medicare for part but

3

not all of the 29-month period beginning November 1, 2013 and ending March 31, 2016 will receive reimbursement of $81 per month for each month that they were eligible for Medicare (with proof of their Medicare Part B payments), and up to $232 for each month that they were not yet eligible for Medicare.

9.     As to the death benefit, the VEBA will pay a $5,000 cash death benefit as to any retiree who died after November 1, 2013.

10.     As to the VEBA health insurance benefit, the VEBA will offer two benefit programs for class members not yet eligible for Medicare and two benefit programs for class members eligible for Medicare.

11.     The VEBA will pay 50% of class members' monthly premium for both of the pre-Medicare programs.   Under the first such program, after the VEBA subsidy is paid, the individual premium is $538 per month and $1074 per family.   Under the second pre-Medicare program, pre-Medicare class members are responsible for monthly premiums of approximately $480 per individual and $959 per family.   Further details concerning the programs are described in the December 21, 2015 Declaration of Jeanette Stump ("Stump Declaration") (Dkt. #288-1). As explained in the Stump Declaration, given publicly available plan options, these programs of coverage offer substantial savings to pre-Medicare retirees.  Id. ¶ 25.

12.     As to Medicare-eligible retirees, the VEBA will pay 70% of the monthly premium for each program.   Under the first program for Medicare-eligible retirees, class members will pay approximately $85 a month for a comprehensive Medicare Advantage plan.   Under the second program for Medicare-eligible retirees, each class member's share of the premium will be $43.20 per month.   Further details concerning the programs are described in the Stump Declaration.  Id. ¶¶ 27-28.

4

13.     Members of the Class have had an opportunity to be heard on all issues regarding the resolution and release of their claims by submitting objections to the Settlement Agreement to the Court and by testifying at the final approval hearing.

14.     On January 5, 2016, 2016, the Court held a settlement fairness hearing (the "Fairness Hearing"), for which members of the Class had been given appropriate notice. A full and fair opportunity to be heard was given to all persons who requested to be heard in accordance with the Preliminary Approval Order and Class Notice.

15.     This Court has considered each of the objections and overrules each with prejudice.

16.     Approximately 409 class numbers, including the five class representatives, signed a petition indicating that instead of the benefits provided by the proposed settlement, they would prefer that each retiree and surviving spouse receive a tax-free lump sum cash payment. Approximately twenty-six class members, almost all of whom also signed the petition, also filed individual objections to similar effect. This objection does not impugn the fairness, adequacy, or reasonableness of the settlement. First, this objection does not take issue with the fact of settlement, or the amount of settlement, but simply objects to the form of the settlement. Second, the Court finds that the lump sum remedy proposed by these Class Members is not in the best interest of the Class a whole because it does not include any health insurance benefit, which the Court finds based on the evidence presented is needed by many Class Members and will be needed by additional Class Members in the future. Third, any cash payment to the Class would be treated as taxable income, thereby reducing the overall recovery of the Class by up to between 35% and 45%, and potentially making some Class Members ineligible for other subsidies, notably under the Affordable Care Act.

17. Approximately five Class Members have objected that the Settlement will not reimburse them for past medical expenses, or that the proposed reimbursement is too low. In fact, the proposed Settlement will reimburse for previously incurred expenses, although those reimbursements are indeed capped. The Court finds that the amount provided for in the Settlement is reasonable, fair, and adequate in light of the risks and delay of further litigation.

18. Approximately eighteen Class Members have objected that the premiums for the proposed VEBA plans are too expensive. This Court first notes that a majority of the Class is currently eligible for Medicare while many more will soon become eligible (see Appendix B to the Declaration of Chris Birch (Dkt. #290)), and that, as discussed, the available Medicare plans are very affordable, at $85 or $43.20 per month. While the premiums for pre-Medicare plans are more expensive, these Class Members will also receive a much higher dollar subsidy from the VEBA, until they become eligible for the cheaper Medicare Advantage plans. This Court finds that the proposed settlement provides a fair and equitable manner of providing for healthcare benefits for the Class.

19. Approximately six Class Members have objected to the VEBA's proposed management fees. The Court finds that the VEBA fees are very reasonable, and that this structure will enable economies of scale in managing and investing the Net Settlement Amount. See Stump Decl. ¶¶ 13-14.

20. Approximately Six Class Members have objected that the VEBA will run out of funds in the near future. These objections appear to stem from a misunderstanding of a statement in the Class Notice. While the Class Notice states that the VEBA may alter the subsidy scheme in 2019, actuary Chris Birch estimated, using reasonable assumptions, that the VEBA will likely be able to offer comparable benefits until approximately 2034. While this is

6

not the equivalent of lifetime healthcare, the Court finds that it is fair, adequate, and reasonable given the risks of continuing the litigation.

21.    Approximately one Class Member has objected that the VEBA will make Class Members ineligible for cheaper insurance plans available from other employers. Without detail concerning these other plans, which the objection has not provided, the Court cannot assess whether these concerns are founded. The Court notes, however, that the VEBA is expected to be available to the Class for approximately eighteen years, providing a safety net to any Class Member who may lose health insurance during that time. That is a fair, adequate, and reasonable resolution of this dispute for the Class.

22.    Approximately one Class Member has objected that newly married spouses will be ineligible for health insurance under the VEBA while ex-spouses will be eligible. The Court rejects this objection because the Class certified by this Court in the Preliminary Approval Order includes spouses who were previously eligible for benefits under the Plan. In addition, and as attested to by Ms. Stump, this is the historical approach to coverage in the Union-represented steel industry. Stump Decl. ¶ 63.

23.    Approximately eight Class Members have objected that the FreightCar Payment is too low. This objection merits careful consideration, as the Settlement Agreement offers less to the Class than they could have received if they had prevailed at trial or on appeal. Nevertheless, this Court finds that Class Counsel, after bringing this case to the brink of trial, have made a fair and informed decision to exchange the uncertainty of litigation for the certainty of a settlement, and that the FreightCar Payment is a fair, adequate, and reasonable sum given the factual and legal disputes in this litigation.

24.     Approximately one Class Member has objected that she would prefer to go to trial.  Different people have different tolerances for risk, and this Court notes that many Class Members, including one who so wrote to this Court, need subsidized healthcare now.  It is fair and reasonable for Class Counsel to settle this case now, so that the Class may receive benefits sooner and have certainty of receiving some benefits.

25.     Approximately eight Class Members have objected that Class Members not yet eligible for Medicare should receive more from the settlement and that the proposed settlement treats Medicare-eligible class members more favorably than pre-Medicare class members.  The Court rejects this objection for several reasons.  First, and as explained by Ms. Stump, pre-Medicare coverage, when compared to unsubsidized alternatives, will cost a couple approximately $750 less per month.  Stump Decl. ¶ 45.  The VEBA subsidy to Medicare-eligible class members is a lower dollar amount.  Second, pre-Medicare retirees often have other opportunities for subsidized coverage available to them, such as under the Affordable Care Act. Third, pre-Medicare retirees will be able to take advantage of subsidized Medicare-eligible coverage upon reaching Medicare age. Conservation of VEBA funds will enable the VEBA to fund benefits for a longer period of time, thus preserving benefits for most pre-Medicare retirees once they reach Medicare age. By structuring the available coverage to encourage pre-Medicare class members to take advantage of other subsidized benefits, VEBA funds will be preserved and VEBA benefits will be available to all retiree class members long into the future. See id.  While many pre-Medicare class members thus will have one or more relatively affordable healthcare options, Medicare-eligible class members will not be able to obtain comprehensive coverage on an individual basis, except to the extent that they or their spouse have access to employer-

8

provided group health insurance. Id. ¶ 46. The Court finds that the proposed distribution of benefits from the VEBA is fair, adequate, and reasonable.

26. Approximately two Class Members have objected that the attorneys' fees in this case are too high. The Settlement Agreement provides that FreightCar will pay $32.75 million to settle the claims of the Plaintiffs. The Court finds that the requested $1.3 million fee and expense award is justified under ERISA, which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Settlement Agreement clearly represents "some degree of success on the merits" within the meaning of Hardt v. Reliance Standard Life Insurance Co., 560 U.S. 242, 245 (2010). Templin v. Independence Blue Cross, 785 F.3d 861, 866 (3d Cir. 2015). The Court has considered the five factors identified in Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir.1983), and finds that they support an award of fees and costs to Plaintiffs since the lawsuit was brought to benefit a class, and the Settlement will result in retiree medical and life insurance benefits to over 1000 Class members. Attorney fee and expense awards under ERISA are generally determined under the "lodestar" approach. Hahnemann University Hospital v. All Shore, Inc., 514 F.3d 300, 310 (3d Cir. 2008). The Court has reviewed the declarations of Counsel and attached exhibits and finds that they represent reasonable hourly rates and a reasonable number of hours in the prosecution of this case. The requested fee is also reasonable when cross-checked under the "common fund doctrine." Where a common fund is created for the benefit of the Class, class counsel is entitled to recover a "percentage-of-the-fund." See Brytus v. Spang & Co., 203 F.3d 238, 243 (3d Cir. 2000). The requested award of $1.3 million represents less than 4% of common fund, which is well-below the range of awards in similar class actions. See e.g., In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 822 (3d Cir.

9

1995). Thus, the Court concludes that either under a "lodestar" analysis under ERISA, a "percentage-of-the-recovery" analysis under the common fund doctrine, or a blended approach whereby one analysis is used to "cross-check" the other, see In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998), the fees requested by Class Counsel are fair and reasonable, and the Court overrules the objection as to Class Counsel's fees.

27. Approximately two Class Members have objected that Class Counsel have been ineffective, or that they have a conflict of interest. This Court finds that Class Counsel has been more than adequate. They have persistently prosecuted the claims of the Class and have obtained a settlement for the Class that is fair, adequate, and reasonable.

28. Approximately four Class Members have objected that they are also owed life insurance. This court dismisses this objection, as the Settlement Agreement provides for a death benefit.

29. Approximately one Class Member has objected that FreightCar could afford to pay more. This is immaterial, because the analysis must focus on the reasonableness of the settlement given the factual and legal arguments raised by the parties. In light of those disputes, this Settlement is reasonable.

30. Approximately two Class Members have objected that they will lose the right to bring suit against FreightCar if the VEBA runs out of funds. The Court dismisses this objection, as it is a necessary component of what is overall a fair, adequate, and reasonable settlement.

31. The Court has considered each of the relevant factors considered in this Circuit, see Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975), and finds that the Settlement Agreement is fair, adequate, and reasonable.

32.     The Girsh factors are: (1) the complexity, expense and likely duration of the

litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund

to a possible recovery in light of all the attendant risks of litigation.

33.     The first Girsh factor weighs in favor of approval. The underlying dispute has

produced four separate class actions, and there was no end in sight. A trial in this matter would

have been complex and expensive, and a judgment would have been followed with further

appeals. This delay would have harmed the Class Members who need health care immediately.

Therefore, the complexity, expense and likely duration of this action weighs in favor of approval.

34.     Although the second Girsh factor does not weigh in favor of approval, it also does

not compel this Court to reject the Settlement. Many class members have voiced objections. But

the objections have not raised any unfair, inadequate, or unreasonable aspects of the Settlement,

as discussed above.

35.     The third Girsh factor weighs in favor of approval. The parties brought this case

to the brink of trial, after two years of pre-trial preparation, and many more years of proceedings

in the three previous class actions. The parties had thoroughly considered the strengths and

weaknesses of their respective positions before they entered into the Settlement Agreement,

suggesting that it is fair, adequate, and reasonable.

36.     The Court finds that the fourth Girsh factor also counsels approval of the

Settlement. If the parties had proceeded to trial, both Plaintiffs and Defendants would have

11

faced considerable risks. It is not necessary, or appropriate, for the Court to determine what the outcome would have been, but there were substantial legal uncertainties. For example, one of the Supreme Court's recent decisions, *M&G Polymers v. Tackett*, —— U.S. ——, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015), suggests that changes to vested benefits may be permissible so long as they are "reasonable."

37.     The fifth <u>Girsh</u> factor weighs in favor of approval. Even if they had continued this litigation and prevailed, Plaintiffs' recovery was uncertain. Benefits would not have been reinstated until this Court entered a final judgment, which may have taken years.

38.     The Court finds that there was not a significant risk that the Class would have been decertified during trial. However, the Court finds that this, the sixth <u>Girsh</u> factor, does not affect the analysis in this case because the parties were motivated to settle by other, significant legal risks.

39.     This Court finds that the seventh <u>Girsh</u> factor is also immaterial in this case. The parties were not motivated to settle this case by the Defendants' inability to withstand a greater judgment. Rather, the parties were motivated by the risks associated with trial and appeal.

40.     Lastly, the Court finds that the eighth and ninth <u>Girsh</u> factors weigh in favor of approval. The Settlement is less than Plaintiffs' best possible recovery. But, it is still a significant benefit to the class, providing for subsidized health care until 2034, given reasonable assumptions. And the disparity between Plaintiffs' best possible recovery and this Settlement is reasonable given the risks associated with further litigation. Therefore, the eighth and ninth <u>Girsh</u> factors suggest that this Settlement is fair, adequate, and reasonable.

41.     Furthermore, the Court determines that the Settlement Agreement has been negotiated vigorously, in good faith, and at arms' length.

42. The motion for final approval of the Settlement Agreement (ECF No. 287) is hereby **GRANTED**, the Settlement of the Class Action is **APPROVED** as fair, reasonable and adequate to the Class, and the Parties are hereby directed to take the necessary steps to effectuate the terms of the settlement. Pursuant to Fed. R. Civ. P. 41(a)(2), the Court hereby dismisses the operative complaint, and all claims asserted therein are hereby dismissed with prejudice and without costs to any of the settling parties other than as provided for in the Settlement Agreement.

43. Consistent with the release included in the Settlement Agreement, and with all terms defined in the Settlement Agreement with respect to the release having the same definitions herein, the Court hereby orders that "Upon the Effective Date, the Union, the Class Representatives and each of the Class Members shall have fully, finally and forever released, dismissed with prejudice, relinquished and discharged all Released Claims. This Release does not release claims by the Union or Class Members to enforce the Settlement Agreement or Judgment." Further, "[w]ith respect to any and all Released Claims," the Court orders that upon the Effective Date, the Union, Class Representatives , and the Class Members "will be releasing all Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent." Without affecting the finality of this Final Order and Judgment, and consistent with the parties' agreement in the Settlement Agreement, the Court orders that it "shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement."

44. Upon entry of this Order, all Class Members shall be bound by the Settlement Agreement as amended and by this Final Order.

13

45.     Class Counsel's requested fee and expense award of $1.3 million is hereby approved. The Court awards to Class Counsel reimbursement of their litigation expenses in the total amount of $27,931.23, including $25,621 for Feinstein Doyle Payne and Kravec, LLC, $142.81 for Brian Zimmerman of B. Zimmerman Law, and $2,167.42 for attorneys from Cornfield and Feldman, LLP. The Court awards $1,272,068.77 to Class Counsel as a reasonable attorneys' fee. Defendants shall make a payment in the total amount of $1.3 million to the law firm of Feinstein Doyle Payne & Kravec LLC within ten days of the Effective Date, as that term is defined in the Settlement Agreement.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

So ordered,

Dated: __January 19, 2016__     Entered: _____

The Honorable Kim. R. Gibson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Society of Professional Engineering Employees in Aerospace, IFPTE Local 2001, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action Nos. 05-CV-1251-MLB-KMH |
| vs. | ) ) | and 07-CV-1043-MLB-KMH |
| The Boeing Company, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## FINAL ORDER AND JUDGMENT APPROVING
## THE HARKNESS CLASS SETTLEMENT

Upon consideration of all documents filed in support of (i) Plaintiffs' Unopposed Motion for (1) Preliminary Approval of Class Action Settlement, (2) Modification of the Class Definition and Class Certification, (3) Approval of Proposed Notice to the Class, and (4) an Order Setting the Date for Class Settlement Fairness Hearing (the "Preliminary Approval Motion") (Docs. 632, 632-1 through 632-5, and 633); (ii) Motion for Attorneys' Fees and Expenses and papers filed in support (Docs. 634-636); (iii) the proposed Plan of Allocation and Distribution Order with changes ("Plan of Allocation") (Doc. 639-1); (iv) all objections filed to granting the relief requested in the Motions (Docs. 641, 643-647, 650-662, ); (v) Joan Farr and Nicholas Wagner's Motion to Compel (Doc. 642) and the responses and replies thereto; and (vi) Plaintiffs' and Boeing's Submissions in Favor of Final Approval (Docs. 667, 668); and

Upon the Court having entered on May 11, 2015, its Order Preliminarily Approving Class Settlement, Conditionally Certifying Class Action as to Damages, Approving Notice to Class Members and the Plan of Notice, and Setting Date for Settlement Fairness Hearing (the "Preliminary Approval Order") (Doc. 637); and

Upon the Court having received a Declaration (Doc. 668-1) attesting to the mailing of Class Notice in accordance with the Preliminary Approval Order; and

Upon a hearing having been held before this Court on August 19, 2015 (the "Settlement Fairness Hearing") (i) to determine whether to grant final approval to the Settlement; (ii) to determine whether to approve the amended Plan of Allocation; and (iii) to rule upon such other matters as the Court might deem appropriate,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

Except as otherwise defined herein, all capitalized and undefined terms used in this Final Order and Judgment Approving the Harkness Class Settlement shall have the same meanings as ascribed to them in the Settlement Agreement and Release ("Settlement Agreement") executed by Settling Plaintiffs and Boeing through their counsel.

1.　　The Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Harkness Class Members.

2.　　By Order dated July 14, 2008, this Court certified the Harkness Class for liability purposes under Fed. R. Civ. P. 23(b)(1) and (b)(2) (Doc. 118).

3.　　By its Preliminary Approval Order (Doc. 637), this Court adopted the following modified class definition for the certified Harkness Class (the "Class"):

> IAM-, SPEEA-, and IBEW-represented Boeing workers in Wichita who were participants in The Boeing Company Employee Retirement Plan ("Boeing Pension Plan") as of June 16, 2005, who had at least ten years of vesting service on that date, who were at least 49 years old but not yet 55 on that date, who went to work at Spirit or its predecessor, Mid-Western Aircraft Systems, on or around June 17, 2005, and who lived to at least age 55.

4.　　Further, the Court in its Preliminary Approval Order conditionally certified the Harkness Class as to damages, finding that the prerequisites of Rule 23(a) and Rule 23(b)(1) were satisfied.

5.      In accordance with Fed. R. Civ. P. 23 and the requirements of due process, the Harkness Class has been given proper and adequate notice of the Settlement Agreement and the Plan of Allocation, as well as of Class Counsel's application for an award of attorneys' fees and for reimbursement of costs and expenses, such notice having been carried out in accordance with the Preliminary Approval Order.  The notice and Plan of Notice implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order: (a) constituted the best notice practicable; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Settlement Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law.

6.      The Court hereby approves the Settlement Agreement and orders that the Settlement Agreement shall be consummated and implemented in accordance with its terms and conditions.

7.      The Court finds that the Settlement embodied in the Settlement Agreement is fair, reasonable, and adequate, and was entered into by Boeing and Settling Plaintiffs in good faith and without collusion, and more particularly finds:

a.      The Settlement was negotiated vigorously and at arm's-length by the Settling Plaintiffs and Class Counsel on behalf of the Harkness Class and Boeing and Boeing's counsel;

b.      The Harkness claims were settled after the Court largely denied both sides' Motions for Summary Judgment, by order of December 11, 2012 (Doc. 581).  The Settlement was reached following arm's-length negotiations among counsel, all of whom were

3

thoroughly familiar with this Litigation.  The negotiations were overseen by a mediator of national renown.  Settling Plaintiffs and Boeing had sufficient information to evaluate the settlement value of the Litigation;

        c.     If the Settlement had not been achieved, Settling Plaintiffs and Boeing faced the expense, risk, and uncertainty of extended litigation concerning the Released Claims, for which serious questions of law and fact exist.  Moreover, a trial would have resulted in a considerable expenditure of judicial resources;

        d.     The amount of the Settlement is fair, reasonable, and adequate, and an immediate recovery outweighs the mere possibility of future relief after further protracted and expensive litigation;

        e.     At all times, the Settling Plaintiffs have acted independently of Boeing and in the interest of the Harkness Class;

        f.     The Court has duly considered the objections to the Settlement that were filed and that were raised during the Settlement Fairness Hearing.  (Docs. 640, 641, 643, 644, 645, 646, 647, 650, 651, 652, 653, 654, 655, 656, 657, 658, 659, 660, 661, 662).  The Court denies those objections for the reasons stated by Class Counsel and Boeing in their respective submissions in favor of final approval.  The Court has also duly considered the motion to compel filed by two objectors and denies the motion for the reasons set forth by Class Counsel and Boeing in their respective responses to that motion.  (Doc. 642).

        8.     The Court certifies the Harkness Class as to damages under Rules 23(b)(1), solely for purposes of implementing the Settlement Agreement, because prosecuting separate actions by the Class Members would create a risk of inconsistent adjudications and adjudications that, as a practical matter, would be dispositive of the interests of other Class Members.

        9.     The Court approves the final list of Class Members, based on the list the Settling

Plaintiffs filed under seal. The Court finds that the list of Class Members was compiled after extensive research and was based on the best available data. The Court approves the inclusion of individuals in the Harkness Class who were on a leave of absence or otherwise not physically present and working in Wichita on June 16, 2005, nevertheless were deemed to be employed there, and whose accrued Boeing pensions transferred to Spirit AeroSystems at that time. The Court specifically finds that Mark Heffington and Steven Basic are not members of the Harkness Class and that Joan Farr Heffington, widow of Mark Heffington, has no standing to object to the settlement because she is neither the executor or administrator of the estate of Mark Heffington. (Docs. 643, 644, 646).

10. The Plan of Allocation as amended (Docs. 639 and 639-1), is rationally related to the Settling Plaintiffs' theories of recovery in the Litigation, which concern the complaints about an inability to access the pensions transferred to Spirit and lost health insurance, and is approved as adequate, fair, and reasonable.

11. In accordance with the process established in the Settlement Agreement, Boeing will wire-transfer the Common Fund Settlement Proceeds in conformity with written instructions provided by the Claims Administrator no more than 21 days after Judgment becomes Final and Unappealable. The Claims Administrator will then begin the process of distributing the Net Common Fund Amount as Payments to Class Members pursuant to the process set forth in the Plan of Allocation.

12. The Court finds that Payments to Class Members, which are the distributions to Class Members from the Net Common Fund Amount according to the Plan of Allocation, are in lieu of the claims asserted by the Settling Plaintiffs in this Litigation and released by this Settlement. While the Settlement Agreement recites all of the claims released thereby, the payments to the Class Members under the Plan of Allocation do not include payment for each of

5

the released claims.  As a result of arm's length, good-faith negotiation, the parties agreed to a compromise by providing a payment for Class Members, which payments relate to the following categories:

       a.     Benefits from a pension plan in which they allege they were or should have been participants, but which pensions were transferred to Spirit (first round of payments).

       b.     Reimbursement of documented medical expenses paid by Class Members (second round of payments).

       c.     General restitutionary payment regarding health expenses related to the release of the contractual claims recited in the Settlement Agreement and not otherwise addressed by the payments in paragraphs (a) and (b), above (third round of payments).

13.     The Court dismisses with prejudice all claims by the Harkness Class Representatives for themselves and all others similarly situated and by the Union Plaintiffs on behalf of their members who are part of the Harkness Class from the Litigation, but the Court retains jurisdiction to enforce the terms of this Settlement Agreement, with the exception of disputes or interpretative issues arising from amount(s) to which an individual Class Member is entitled to receive from the Net Common Fund Amount.

14.     Any disputes or interpretive issues regarding the Payments to Class Members from the Medical Claims Reimbursement shall first be submitted to the Claims Administrator for a decision. If any party or Class Member disagrees with the decision made by the Claims Administrator, the party or Class Member may then submit the dispute to a neutral Third Party as part of a claims review process.  The Third Party, designated by the Settling Plaintiffs and Class Counsel, will review claims and issue a final decision within ninety days.  The Third Party's costs and fees will be paid from the Common Fund Settlement Proceeds.  There is no further right of appeal from the Third Party's final decision.  The Court shall retain jurisdiction

as to disputes or interpretive issues concerning the Plan of Allocation that do not concern the amount(s) to which an individual Class Member is entitled to receive from the Net Common Fund Amount, pursuant to Sections 2.2(d) and 8.6 of the Settlement Agreement.

15.     The Court orders that Boeing and the Released Parties will have no responsibility or liability for determining eligibility for or allocation of the Net Common Fund Amount or any other acts of the Claims Administrator.  Similarly, the Court orders that Boeing, the Released Parties, Settling Plaintiffs, Union Plaintiffs, and Class Counsel have no responsibility or liability for calculations made according to the formula set forth in the Plan of Allocation which the Court has now approved.  The calculations under the formula are based on information that is unique to each Class Member, and sent to that Class Member by the Claims Administrator in the Information Addendum on June 1, 2015 as part of the court-ordered Notice of Proposed Class Action Settlement.  Class Members had the opportunity to dispute the listed information until July 15, 2015.  As part of the Preliminary Approval Order, the Court approved the means by which Class Members were apprised of the information and the means of initiating a dispute, which the Claims Administrator is charged with resolving.  Under these circumstances, as set forth above, the Court orders that Boeing, the Released Parties, Settling Plaintiffs, Union Plaintiffs, and Class Counsel have no responsibility or liability for calculations made according to the formula set forth in the Plan of Allocation.

16.     The Court adjudges that the Settling Plaintiffs are deemed conclusively to have released all Released Claims against all Released Parties, based on the meaning of those terms in the Settlement Agreement. Therefore, the Court bars and permanently enjoins the Settling Plaintiffs from prosecuting, commencing, or continuing any of the Released Claims against any of the Released Parties.

17.    The Court recognizes that, by agreeing to settle the Released Claims, Boeing does not admit, and specifically denies, any and all liability to the Settling Plaintiffs.

18.    The Court finds that the Claims Administrator, Gilardi & Company, has given notice to the Harkness Class according to the Preliminary Approval Order and as required by law and due process.

19.    The Court finds that the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, as have been satisfied, as the prescribed CAFA notices were served more than 90 days before the Settlement Fairness Hearing.

20.    The Court approves the arrangement by which the Union Plaintiffs will be reimbursed from the Common Fund Settlement Proceeds for any Administration Fees and Expenses that they advance to the Claims Administrator before the Judgment becomes Final and Unappealable.

21.    The Court approves the agreement between Boeing and the Union Plaintiffs that they will limit public comment on the Settlement Agreement to statements that the parties agreed to a resolution of the matter.

22.    The Court orders that the Protective Order will continue to govern the use and disclosure of all documents and information designated in the Litigation as confidential by any party until judgment on the entire Litigation (including the claims of the seventeen individual McCartney/Boone Plaintiffs) becomes Final and Unappealable.

23.    The Court approves the parties' agreement that the Settlement Agreement and the certification of the Harkness Class as to damages may never be used for any purpose in any subsequent litigation against the Released Parties, other than to enforce the terms of the Settlement Agreement.

24.    The Court approves the Release as set forth in Section 1.23 of the Settlement

8

Agreement and as follows:

     1.23   **"Released Claims"** means and includes all past or present claims, demands, actions, causes of action, grievances, allegations, rights, obligations, costs, losses, and damages arising in whole or in part from or in connection with acts or omissions of any of the Released Parties of any and every kind or nature, whether in law or in equity, in tort or contract, or arising under any statute or regulation, based upon the causes of action described which were, or could have been, asserted or made in the Litigation by or on behalf of the Settling Plaintiffs.  Also, without limiting the generality of the foregoing, "Released Claims" include, but are not limited to, claims arising from: (i) the alleged breach of contractual promises to treat the Class Members as laid off and to provide certain pension benefits and health benefits to them as laid-off Boeing employees; (ii) the alleged unlawful interference with the pension and health care rights of the Class Members; (iii) the denial of benefits to Class Members based on the alleged incorrect application of the governing terms of various benefit plans; (iv) the amendment of the Boeing Company Employee Retirement Plan and transfer of plan assets and liabilities to the plans of Spirit; (v) the alleged eligibility for or entitlement to benefits under The Boeing Company's retiree medical or pension plans; (vi) Boeing's administration and interpretation of its retiree medical, pension, or layoff benefit plan documents; (vii) any alleged rights Settling Plaintiffs have as third party beneficiaries to any Boeing contract regarding its retiree medical, pension, or layoff benefit plans; (viii) the Class Members' termination of employment from The Boeing Company; (ix) any compensation or benefit the Class Members allegedly earned or accrued as an employee of The Boeing Company, including any such alleged compensation or benefit from the retiree medical, pension, or layoff benefit plan, including The Boeing Company Employment Retirement Plan and the Pension Value Plan; and (x) The Boeing Company's decision to sell and sale of its Wichita Commercial Facilities and the effects of that decision and sale.  The Settling Plaintiffs expressly recognize that this Settlement Agreement releases all Settling Plaintiffs' claims for benefits from any Boeing retiree medical, pension, or layoff benefit plan.  Released Claims do not include the claims of the McCartney/Boone plaintiffs or the claims of the Union Plaintiffs on behalf of the McCartney/Boone Plaintiffs, and the claims of those 17 individuals and of the Unions concerning them will remain pending in the Litigation.  Notwithstanding any of the above, the Released Claims do not include claims related to any employee benefits earned by a Class Member while employed by Boeing after June 17, 2005.  Also notwithstanding any of the above, the Released Claims do not include claims for benefits under the Boeing Voluntary Investment Plan for any Class Member who is still an acknowledged participant or beneficiary of the Boeing Voluntary Investment Plan.

     25.   If the Settlement Agreement is terminated or fails to become effective for any reason, then the Settling Plaintiffs and Boeing will return to their respective status in the Litigation as of the date immediately prior to the parties' Settlement Agreement, and they will proceed in all respects as if this Settlement Agreement and all related Orders of the Court had

never been executed, and all parties agree to the Court's vacating of all Orders entered pursuant to this Settlement Agreement.

26.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

27.     The Court grants the Motion for Attorneys' Fees and Expenses (Doc. 634).  The Court finds that the requested attorneys' fees and expenses are authorized by the Settlement Agreement.  The Court further finds that the request here was made by motion filed with the Court, and that the notice sent to the class informed the class members of the attorneys' fees request (Doc. 637-1).  The Court finds that Class Counsel has achieved more than some degree of success on the merits, as that phrase is described in *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 245 (2010).  The Court approves the payment of these fees pursuant to 29 U.S.C. §1132(g).  The Court has considered the factors set forth in *Gordon v. U.S. Steel Corp.*, 724 F.2d 106 (10th Cir. 1983) and its progeny, and the Court finds that those factors are satisfied here and all support payment of the requested fees.  The Court finds that the time records filed with the Court substantiate the claimed number of hours or work.  The Court further finds that the requested hourly rates are reasonable and that they substantiate the fee amount requested.  In sum, the Court finds that Class Counsel has substantiated the requested amount of fees and costs and that they are reasonable and should be paid.  The Court further concludes that the requested fees are more than reasonable under the analysis set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

28.     The Court concludes that certification of this Final Order and Judgment Approving the Harkness Class Settlement ("Final Order") satisfies the requirements of Fed. R. Civ. P. 54(b), and the Court therefore certifies this Final Order as a final judgment pursuant to that Rule. Specifically, the Court finds:

a.     This Litigation involves more than one claim for relief and multiple

parties.

b.     This Final Order adjudicates fewer than all the claims of all the parties to

the Litigation. This Final Order  is directed toward the Harkness Class and Harkness Class

Representatives and the Released Claims of the Settling Plaintiffs. However, the claims brought

by the 17 individual McCartney/Boone Plaintiffs and the claims of the Union Plaintiffs on behalf

of the McCartney/Boone Plaintiffs (collectively "McCartney/Boone Claims") remain pending in

the Litigation.

c.     The Released Claims by and on behalf of the Harkness Class are separable

from the McCartney/Boone Claims, as they turn on different factual questions, different legal

issues, and allow for separate recovery. No appellate court would have to decide the same issues

more than once, even if there are separate appeals of the Released Claims and the

McCartney/Boone Claims.

d.     This Final Order is the ultimate disposition of all Released Claims and is a

final judgment of the Released Claims.

e.     There is no just reason to delay review of this Final Order, because it

disposes of claims that are separate and distinct from the remaining McCartney/Boone Claims. A

Rule 54(b) certification of this Final Order is efficient and practical, as it will allow this Final

Order to become Final and Unappealable on its own terms, thereby allowing the Settlement

Agreement to take effect, without delays tied to the further litigation of the remaining

McCartney/Boone Plaintiffs.

29.     Pursuant to Fed. R. App. P. 7, and <u>Tennille v. Western Union Co.</u>, 774 F.3d 1249

(10th Cir. 2014), the Court requires any appellant to file a bond in the amount of $5,000 to

ensure payment of the parties' costs on appeal.   The Court finds that this bond is necessary to

ensure against the considerable risk of the appellants' non-payment of costs if the appeal is unsuccessful.

Ordered: ___September 3, 2015.

_____s/ Monti Belot_____
Honorable Monti L. Belot
U.S. District Court Judge

Case 8:14-cv-00607-SDM-AAS Document 135-3 Filed 07/27/17 Page 45 of 62 PageID 3886
Case 2:08-cv-00400-TRM Document filed: 07/roters Page 2008 13 Page Eby 2. 11237

Case 3:07-cv-00201-KRG    Document 131    Filed 11/03/2008    Page 1 of 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## JOHNSTOWN DIVISION

KENNETH J. SOWERS, ANTHONY J.
ZANGHI and ROBERT A. HAYDEN, JR.,
ROBERT A. HOMYAK, on behalf of
themselves and others similarly
situated,

        Plaintiffs,

    v.

FREIGHTCAR AMERICA, INC.,

        Defendant.

**Civil Action No.: 03:07cv201-KRG**

District Judge Kim R. Gibson

Class Action

Electronically Filed

### AMENDED **ORDER**

Having reviewed and considered Plaintiffs' Motion for Award of Attorneys' Fees and

Expenses, the Court HEREBY ORDERS that the Motion is granted:

1.    A rate of $475/hour is reasonable for William T. Payne, John Stember, Edward J.

Feinstein, and Ellen Doyle.

2.    A rate of $425/hour is reasonable for Pamina Ewing and Stephen M. Pincus.

3.    A rate of $390/hour is reasonable for Jonathan Cohn.

4.    A rate of $375/hour is reasonable for Joel Hurt.

5.    A rate of $220/hour is reasonable for Maureen Davidson-Welling.

6.    A rate of $125/hour is reasonable for Stember Feinstein Doyle & Payne law

clerks and paralegals.

7.    The fees and expenses requested by Class Counsel totaling $675,000 are hereby

approved and allowed.

8. Defendants shall pay Class Counsel $675,000 within thirty (30) days of the

Effective Date of parties' August 5, 2008 Stipulation and Agreement of Settlement (the

"Settlement") (Dkt #120), as set forth in Paragraph 5 of the Settlement's Terms and Conditions.

Judge Kim R. Gibson

Dated: November 20, 2008

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEONHARDT, LAWRENCE M. FIRMANI,
and SAM CARUSO, for themselves and others similarly
situated, and UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC,

          Plaintiffs,                      Case No. 04-CV-72845

v.

                                          U.S. District Judge Nancy G. Edmunds

ARVINMERITOR, INC.; NORTH AMERICAN
ROCKWELL CORPORATION; ROCKWELL
INTERNATIONAL CORPORATION;
and ROCKWELL AUTOMATION,

          Defendants.
_____/

**OPINION AND ORDER**
**GRANTING MOTION FOR ATTORNEY FEES AND EXPENSES [48]**

      Plaintiffs and class representatives Robert Leonhardt, Lawrence M. Firmani, and Sam

Caruso, for themselves and on behalf of the certified class, having filed a Motion For Attorney

Fees And Expenses (Docket 48) pursuant to Fed. R. Civ. P. 23(h) and 54(d) and Section 502(g)(1)

of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1132(g)(1) and the

Settlement Agreement entered into by the parties and approved by the Court as fair, reasonable

and adequate pursuant to Rule 23(e) (Docket 51), and the Court having considered the motion and

the declaration and exhibits accompanying the motion and being otherwise advised, the Court

grants the motion and finds and orders as follows:

1.  "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" upon motion under Rule 54(d)(2), subject to Rule 23(h) procedures. Fed. R. Civ. P. 23(h).

2.  In ERISA actions by a "participant" or a "beneficiary," the court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." Employee Retirement Security Act Section 502(g)(1), 29 U.S.C. §1132(g)(1); *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350 (E. D. Mich.) at *3 (Edmunds, J.).

3.  Attorney fee awards may be determined by the "lodestar approach" which entails calculation of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350 (E. D. Mich.) at *5 (Edmunds, J.), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

4.  A reasonable hourly rate is determined according to the "prevailing market rates in the relevant community." To ascertain that community, district courts "are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350 (E. D. Mich.) at *5 (Edmunds, J.), citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *McHugh v. Olympia Entertainment, Inc.*, 37 Fed. Appx. 730, 740 (6th Cir. 2002); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983).

5.      "The court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved. ... The core inquiry is whether the award is reasonable under the circumstances. ... [T]here is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases. Adequately compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law. ... An ERISA case involves highly-specialized and complex areas of law." *Rankin v. Rots*, 2006 WL 1791377 (E.D. Mich.) at \*1-3 (Cohn, J.) (citations omitted).

6.      Recent fee awards in ERISA retiree health benefit class action settlements in the Eastern District of Michigan approved rates of $475 per hour for lead and experienced class counsel and $125 per hour for law clerks and paralegals. See *UAW v. General Motors Corp.*, U.S.D.C., E.D. Mich. no. 07-cv-14074 (July 31, 2008 order); *UAW v. Ford Motor Co.*, U.S.D.C., E.D. Mich. no. 07-cv-14845 (July 7, 2008 order); *UAW v. Chrysler, LLC,* U.S.D.C., E.D. Mich. no. 07-cv-14310 (May 16, 2008 order).

7.      Here, class counsel reasonably devoted and appropriately documented work hours in the prosecution of this action for the period April 8, 2004 through June 30, 2008 as follows: 1,211.60 attorney hours and 537.50 paralegal and law clerk hours.

8.      A rate of $475 per hour for class counsel is reasonable and warranted for Stuart M. Israel, William T. Payne, Renate Klass, and Douglas Greenfield.

9.      A rate of $125 per hour for paralegals and law clerks assisting class counsel is reasonable and warranted.

10.     Plaintiffs reasonably spent and appropriately documented costs and expenses in the prosecution of this action for the period April 8, 2004 through June 30, 2008 in the amount of $10,857.15.

11.     The fees and expenses requested for the period April 8, 2004 through June 30, 2008 totaling $642,697.50 are reasonable, warranted, approved and allowed.  Pursuant to the Settlement Agreement (Docket 46, Ex. 1, ¶17), class counsel is authorized to withdraw this approved amount from the reserve funds and appropriately distribute it.

12.     Pursuant to the Settlement Agreement (Docket 46, Ex. 1, ¶17) and the procedure described in the approved class notice (Docket 46, Ex. 2; Docket 47), class counsel may submit supplemental fee and expense requests for work done and expenses incurred after June 30, 2008 in connection with the settlement approval process and the implementation of the Settlement Agreement and judgment, and the Court will appropriately address and decide those supplemental requests as they are made.


                                         _s/ Nancy G. Edmunds_____
                                         Nancy G. Edmunds
                                         United States District Court Judge

Dated:  October 7, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA and EARL L. HENRY, BONNIE J.
LAURIA, RAYMOND B. BAILEY, THEODORE
J. GENCO, MARVIN C. MARLOW, CHARLES
R. MILLER, LAVERNE M. SORIANO and JOHN
HUBER, on behalf of themselves and all other
persons similarly situated,

        Plaintiffs,

v.                              Case No. 07-CV-14074-DT

GENERAL MOTORS CORPORATION,

        Defendant.
_____/

**OPINION AND ORDER GRANTING "CLASS REPRESENTATIVES' MOTION FOR**
**ATTORNEYS' FEES AND EXPENSES"**

Having considered "Class Representatives' Motion for Attorneys' Fees and

Expenses," and notice of that motion having been directed through the Class Notice to

the class members in a reasonable manner, the court makes the following findings of

fact and conclusions of law (to be supplemented after counsel supplement their motion

14 days after judgment pursuant to Rule 54(d)(2)):

    1.    Class Counsel are entitled to fees and nontaxable costs pursuant to

ERISA.

    2.    The hourly rates they seek are reasonable – $475/hr. for William T. Payne

and other senior Stember Feinstein Doyle & Payne ("SFDP"), LLC partners; $425/hr for

junior SFDP partners Pamina Ewing and Stephen M. Pincus; $390/hr. for SFDP senior

associate Jonathan K. Cohn; $375/hr. for SFDP senior associate Joel R. Hurt; $230/hour for first-year attorneys Maureen Davidson-Welling and Rachel Kassner Davis; and $125/hr. for SFDP law clerks and paralegals.

      3.     Given the size and complexity of the case, counsel's estimated award of approximately $664,672 in attorneys' fees, $234,500 for expert costs and $ 11,000 in other costs would be reasonable and proper.

      4.  Further proceedings concerning fees and costs may be held after counsel supplement their motion 14 days after judgment.

    IT IS ORDERED that "Class Representatives' Motion for Attorneys' Fees and Expenses" [Dkt. # 42] is GRANTED.

                    S/Robert H. Cleland
                    ROBERT H. CLELAND
                    UNITED STATES DISTRICT JUDGE

Dated: July 31, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 31, 2008, by electronic and/or ordinary mail.

                    S/Lisa Wagner
                    Case Manager and Deputy Clerk
                    (313) 234-5522

7/31/08:S:\Cleland\JUDGE'S DESK\C1 ORDERS\07-14074,UAWGM,OrderReEntitlementToAttnysFees.wpd

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA; and BOBBY HARDWICK, WALTER
BERRY, RAYMOND J. MITCHELL, FAY
BARKLEY, ARLEN BANKS, YVONNE HICKS,
and BRUCE CARRIER on behalf of themselves
and all other persons similarly situated,

        Plaintiffs,

v.

                                    Case No. 07-CV-14845

FORD MOTOR COMPANY,           CLASS ACTION

        Defendant.
_____/

**ORDER CONFIRMING ENTITLEMENT TO ATTORNEY FEES**

        Having considered the motion for an award of attorneys' fees and costs, and

notice of that motion having been directed through the Class Notice (p.6) to the class

members in a reasonable manner, the court makes the following findings of fact and

conclusions of law (to be supplemented after counsel supplement their motion fourteen

days after judgment pursuant to Rule 54(d)(2)):

        1.     Class Counsel are entitled to fees and nontaxable costs pursuant to

ERISA.

        2.     The hourly rates they seek are reasonable – $475/hr. for William T. Payne

and other senior Stember Feinstein Doyle & Payne ("SFDP"), LLC partners, $425/hr for

junior SFDP partners Pamina Ewing and Stephen M. Pincus, $390/hr. for SFDP senior

associate Jonathan K. Cohn, $370/hr. for SFDP senior associate Joel R. Hurt, $230/hour for first-year attorney Rachel Kassner Davis and $125/hr. for SFDP law clerks and paralegals.

   3. Given the size and complexity of the case, counsel's estimated award of approximately $244,214 in attorneys' fees, $121,504 for expert costs, and $ 4,250 in other costs would be reasonable and proper.

   4. Further proceedings concerning fees and costs may be held after counsel supplement their motion fourteen days after judgment.

  IT IS SO ORDERED.

       S/Robert H. Cleland
       ROBERT H. CLELAND
       UNITED STATES DISTRICT JUDGE

Dated: July 7, 2008


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 7, 2008, by electronic and/or ordinary mail.

       S/Lisa Wagner
       Case Manager and Deputy Clerk
       (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\07-14845,UAW-FORD,OrderConfirmingEntitlementtoAttorneyFees.wpd

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA; and WILLIAM ENGLISH,
GERALD M. SYKES, LARRY J. SCOTT, and
BEVERLY JENNINGS, on behalf of
themselves and all other persons similarly
situated,

Plaintiffs,

v.

CHRYSLER, LLC,

Defendant.

Case No. 2:07-cv-14310-RHC-SDP

District Judge Robert H. Cleland

Magistrate Judge Steven D. Pepe

# FILED

MAY 1 6 2008

CLERK'S OFFICE, DETROIT-PSG
U.S. DISTRICT COURT

### ORDER

Having considered the motion for an award of attorneys' fees and costs, and notice of

that motion having been directed through the Class Notice to the class members in a reasonable

manner, the Court makes the following findings of fact and conclusions of law (to be

supplemented after counsel supplement their motion 14 days after judgment pursuant to

Rule 54(d)(2)):

1.    Class Counsel are entitled to fees and nontaxable costs pursuant to ERISA.

2.    The hourly rates they seek are reasonable – $475/hr. for William T. Payne and

other senior partners at Stember Feinstein Doyle & Payne, LLC ("SFDP"); $425/hr. for Stember

Feinstein Doyle & Payne ("SFDP"), LLC's junior partners Pamina Ewing and Stephen M.

Pincus; $390/hr. for SFDP senior associate Jonathan K. Cohn; $370/hr. for SFDP senior associate Joel R. Hurt; $400/hr. for SFDP of counsel Lawrence Frolik; $230/hr. for SFDP first-year attorney Rachael Kassner Davis; and $125/hr. for SFDP law clerks and paralegals.

    3. Given the size and complexity of the case, counsel's estimated award of approximately $323,255 in attorneys' fees, $77,500 for expert costs, and $7,000 in other costs would be reasonable and proper.

    4.    Further proceedings concerning fees and costs may be held after counsel supplement their motion 14 days after judgment.

                                        So Ordered,

Date:    _____    _____

                                        Robert H. Cleland
                                        United States District Judge

cc:    All parties of record.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; and BOBBY HARDWICK, CARL MALFITANO, WALTER BERRY, RAYMOND J. MITCHELL, FAY BARKLEY, ARLEN BANKS, and YVONNE HICKS, on behalf of themselves and all other persons similarly situated, | Case No: 05-74730 |
| | Hon. Paul D. Borman |
| | Magistrate Virginia M. Morgan |
| | **CLASS ACTION** |
| Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

## ORDER

Having considered the Plaintiff Class Representatives' Supplemental Brief in Support of

their Motion for Attorneys' Fees and Expenses,

Having considered Magistrate Judge Virginia Morgan's Report and Recommendation

Granting Motion for Attorneys' Fees and Expenses (Docket #953), and

Having noted that there is no Objection to Magistrate Judge Virginia Morgan's Report

and Recommendation (Docket #954)

It is hereby ORDERED

1.      Magistrate Judge Virginia Morgan's Report and Recommendation Granting

Motion for Attorneys' Fees and Expenses is ADOPTED.

2.      Class counsel are entitled to fees and nontaxable costs pursuant to ERISA for their work since July 31, 2006.

3.      The hourly rates they seek are reasonable – $450/hr. for William T. Payne, John Stember and Edward J. Feinstein; $375/hr for Pamina Ewing and Stephen M. Pincus; $100/hr. for law clerks; and $90/hr. for paralegals.

4.      Class Counsel are awarded $62,650.00 as reasonable attorneys' fees and are also awarded $1,075.60 in costs (for a total of $63,725.60).

5.      This Court also retains jurisdiction over any additional fee petitions in otherwise obtaining or defending the judgment.

So Ordered,

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 27, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 27, 2007.

s/Denise Goodine
Case Manager

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; and EARL L. HENRY, BONNIE J. LAURIA, RAYMOND B. BAILEY, THEODORE J. GENCO, MARVIN C. MARLOW, CHARLES R. MILLER and LAVERNE M. SORIANO on behalf of themselves and all other persons similarly situated, | Case No.: 05-73991 <br><br> Hon. Robert H. Cleland <br> Magistrate Virginia M. Morgan <br><br> **CLASS ACTION** |
| Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS CORPORATION, <br><br> Defendant. | |

**ORDER**

Having considered the Plaintiff Class Representatives' Supplemental Brief In Support Of their Motion For Attorneys' Fees And Expenses (Docket No. 1433):

1.    Class counsel are entitled to fees and nontaxable costs pursuant to ERISA for their work since March 31, 2006.

2.    The hourly rates they seek are reasonable – $450/hr. for William T. Payne, John Stember and Edward J. Feinstein; $375/hr for Pamina Ewing, Stephen M. Pincus and Jonathan Cohn; $100/hr. for law clerks; and $90/hr. for paralegals.

3.    Class Counsel are awarded $76,325.00 as reasonable attorneys' fees and are also awarded $1,607.83 in costs (for a total of $77,932.83).

1

4.      This Court also retains jurisdiction over any additional fee petitions in otherwise

obtaining or defending the judgment.

                                                    So Ordered,


Date:    __September 24, 2007_____                 s/ROBERT H. CLELAND_____
                                                    Robert H. Cleland
                                                    United States District Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 05-21207 |
| | § | |
| ASARCO, LLC, *et al.,* | § | Chapter 11 |
| | § | |
| Debtors. | § | Jointly Administered |

### ORDER

Having reviewed and considered Unions', Individual Class Representatives' and

Class Counsel's Motion for Award of Attorneys' Fees and Expenses, the Court HEREBY

ORDERS that the Motion is granted:

    1.    A rate of $450/hour is reasonable for William T. Payne, John Stember,

Edward J. Feinstein, and Jere Krakoff.

    2.    A rate of $375/hour is reasonable for Pamina Ewing, Stephen M. Pincus,

and Jonathan Cohn.

    3.    A rate of $390/hour is reasonable for Michael Keenan.

    4.    A rate of $100/hour is reasonable for Stember Feinstein law clerks and

$80/hour for Stember Feinstein paralegals.

    5.    The fees and expenses requested by Class Counsel totaling $800,000 are

hereby approved and allowed.

    6.    Upon entry of this order or within five business days thereafter, ASARCO

LLC shall pay Class Counsel $800,000.

Dated: _____

RICHARD S. SCHMIDT
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT 12

**UNITED STATES DISTRICT COURT FOR**

**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Donald Santos and United Steelworkers of America, AFL-CIO-CLC, on behalf of themselves and others similarly situated, | No. C 05-00149-CRB |
| Plaintiffs, | Class Action |
| v. | |
| Pechiney Plastic Packaging, Inc. (formerly doing business as American National Can Company, Pechiney, S.A.); Pechiney Plastic Packaging, Inc. Group Benefit Plan for Retired Union Employees; and John Does 1 through 20, | |
| Defendants. | |

**ORDER**

Having reviewed and considered Plaintiffs' Motion for Attorneys' Fees and Costs, the Court HEREBY ORDERS that the Motion is granted.

    1.    A rate of $450/hour is reasonable for William T. Payne, John Stember, Edward J. Feinstein, Jere Krakoff, Dolly Gee and Margo Feinberg.

    2.    A rate of $350/hour is reasonable for Pamina Ewing and Stephen M. Pincus.

    3.    A rate of $100/hour is reasonable for the paralegals at Stember Feinstein.

    4.    Defendants shall pay Plaintiffs counsel $61,000 in fees and $6,250 in costs within 20 days of this order.

So Ordered,

Date: _____July 7, 2006_____

_____
U.S. District Court

IT IS SO ORDERED

Judge Charles R. Breyer

cc:    All parties of record

1

Plaintiffs' Motion for Attorneys' Fees and Costs
Case No. C 05-00149-CRB

EXHIBIT 11