UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL L. COMER, et al.,

    Plaintiffs,

v.                                                      CASE NO. 8:14-cv-607-T-23AAS

GERDAU AMERISTEEL
US INC., et al.,

    Defendants.
_____/

## **ORDER**

The plaintiffs allege (Doc. 73) that a predecessor of Gerdau Ameristeel agreed in 1981 to provide union members at a Sand Springs, Oklahoma, steel plant with health insurance at a fixed cost and that subsequent collective-bargaining agreements continued the health insurance at the same cost. According to the plaintiffs, Gerdau breached the agreement in 2013 by demanding that members contribute more money to the health-insurance premium. A June 12, 2014 order (Doc. 37) certifies a class that comprises:

> 1. Retirees (and their spouses and eligible dependents) of the Sand Springs, Oklahoma plant (the Plant) who (i) were represented during their employment by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (formerly known as the United Steelworkers of America, AFL-CIO/CLC) on behalf of Local 2741 (USW), (ii) retired from the Plant between September 1, 1981, and March 2, 2011, and (iii) were receiving or were eligible to receive retiree health care benefits from Gerdau as of December 31, 2012 (i.e., retired under the company pension plan on other than a deferred vested pension from a group of employees designated by the company

> as covered by the Plan, and at the time of retirement had fifteen or more years of continuous service).
>
> 2. Surviving spouses (and their eligible dependents) who (i) were receiving a surviving spouse's benefit under the company pension plan as the surviving spouse of either a retiree described in paragraph one or an active employee of the Plan who was represented by USW and died between September 1, 1981, and March 2, 2011, at a time when the employee was accruing continuing service in a group of employees designated by the company as covered by the Plan, and (ii) were receiving or eligible to receive retiree health care benefits from Gerdau as of December 31, 2012.
>
> 3. All former employees of the Plant who were represented during their employment by USW (and their spouses, eligible dependents, or surviving spouses) who were receiving or were eligible to receive retiree health care benefits from Gerdau as of December 31, 2012, but who do not fall within paragraph one or two above.

(Doc. 129 at 1–2, which grants the joint motion to amend the class definition) A June 15, 2017 order (Doc. 129) preliminarily approves the proposed class settlement. In accord with the June 15 order, Gerdau mailed to each class member a notice about the proposed settlement. (Doc. 139-1) The parties submit memoranda (Docs. 140 and 141) in support of final approval, and the plaintiffs move (Doc. 135) for a reasonable attorney's fee, costs, and expenses incurred in this litigation. At a November 13, 2017 fairness hearing, the class counsel and the defense counsel urged final approval, and no person at the hearing objected to the settlement or the attorney's fee.

## DISCUSSION

### 1. Approval of the class settlement

A class settlement commends approval if fair, adequate, and reasonable. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (identifying the six

factors relevant to a settlement's fairness, adequacy, and reasonableness). Also, the settlement must not result from collusion between the parties. *Bennett*, 737 F.2d at 986. Cary Singletary, a mediator certified in the Middle District of Florida, facilitated the settlement (Doc. 140 at 5), and the record reveals no collusion between the parties.

Under the settlement (Doc. 125-1), Gerdau will contribute $1,800 annually to a Health Retirement Account (HRA) of a class member older than 65. To adjust for inflation, Gerdau will increase the contribution by 1.375% annually. Gerdau will offer the services of "One Exchange" (or a comparable service) to assist a class member in obtaining supplemental Medicare insurance, but a class member need not purchase the supplemental insurance through One Exchange (or the comparable service if Gerdau contracts with another service) to receive the HRA contribution.

Gerdau will contribute $3,600 annually to the HRA of a class member younger than 65 but eligible for Medicare as a result of a disability. Again, Gerdau will increase the contribution by 1.375% annually to adjust for inflation. Gerdau will offer the services of "One Exchange" (or a comparable service) to assist a class member in obtaining supplemental Medicare insurance, but a class member need not purchase the supplemental insurance through One Exchange (or the comparable service if Gerdau contracts with another service) to receive the HRA contribution. After a class member in this group turns 65, Gerdau will contribute an amount equal to Gerdau's contribution to a class member older than 65.

Gerdau will offer a class member younger than 65 and ineligible for Medicare the opportunity to enroll in the "restated Sheffield Plan," that is, the "plan of benefits that Gerdau has provided to the class [members younger than 65 and ineligible for Medicare] before the changes at issue in this lawsuit." (Doc. 126 at 8) Gerdau will contribute $8,820 annually to offset the premium under the "restated Sheffield Plan." If the premium exceeds $8,820 annually, the class member must pay the excess. After June 2, 2025, a class member in this group may elect either to remain in the restated Sheffield Plan or to receive an annual and pro-rated HRA contribution of $8,820. If a class member elects the HRA contribution before turning 65, the class member cannot return to the restated Sheffield Plan. After a class member in this group turns 65, Gerdau will terminate the class member's enrollment in the restated Sheffield Plan and will contribute to the class member's HRA an amount equal to Gerdau's contribution to a class member older than 65.

Also, each class member will receive an equal share of $225,000, which Gerdau provides to "partially reimburse" a class member for "the additional amounts they paid for the costs of their medical and prescription during coverage since January 1, 2013." (Doc. 126 at 9) The parties estimate that each class member will receive $493, which Gerdau will deposit in the class member's HRA (if the class member maintains an HRA) or will pay by check (if the class member lacks an HRA). Additionally, Gerdau will provide a "basic life insurance benefit" to each retiree class member until death. Finally, Gerdau agrees to pay no more than $725,000 in an attorney's fee, costs, and expenses.

The settlement resolves the class action fairly, adequately, and reasonably. The plaintiffs, who acknowledge that "significant risks remain to establishing both liability and damages" (Doc. 140 at 12), allege that Gerdau agreed in 1981 to provide retirees with health care benefits, that the 1981 agreement fixed the health care premiums, and that several labor agreements after 1981 continued the premiums in the 1981 agreement. But "missing or ambiguous documents" and the unavailability of "key witnesses" might diminish or preclude recovery. (Doc. 140 at 12) Rather than await an uncertain result at trial, the class members receive "immediate and certain relief" under the settlement. (Doc. 140 at 13) Additionally, both the time and the expense of litigating the action strongly favor approval. A trial, which might conclude as late as 2020, requires the presentation of several thousand documents and the testimony of more than two-dozen witnesses. The inevitable appeal likely would prolong the resolution of this action by at least another year. Also, during discovery the parties exchanged nearly 60,000 pages and deposed twenty-three witnesses during the three years after the complaint. The extensive discovery permitted experienced counsel to formulate an informed opinion on the merits of the plaintiffs' claims and the likelihood of recovery. *See Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).

Finally, approval depends partly on the "substance and amount of [class] opposition to the settlement." *Bennett*, 737 F.2d at 986. No person objected at the fairness hearing, and one of the four-hundred and fifty-six class members submitted a written objection. (Doc. 134) Edgar Fairchild, who worked at the plant for several

- 5 -

decades, states that the class members "will be giving up what was agreed upon." (Doc. 134 at 3) But, as explained above, uncertainty about Gerdau's obligation under the union contracts pervades this action and greatly increases the risk that the plaintiffs might recover little or nothing after protracted litigation. In this circumstance, a settlement that continues the health-insurance subsidy resolves the plaintiffs' claims fairly and reasonably. *See Bennett*, 737 F.2d at 986 (observing that "compromise is the essence of settlement"). Fairchild's objection (Doc. 134) is **OVERRULED**.

**2. Motion for an attorney's fee**

The plaintiffs move (Doc. 135) under Rule 23(h), Federal Rules of Civil Procedure, for a reasonable attorney's fee and state that Gerdau agreed to pay $725,000, which includes the attorney's fee, costs, and expenses. The application of the pertinent *Johnson* factors shows that the agreed fee reasonably compensates class counsel. *See Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (identifying the factors that determine the reasonableness of an attorney's fee). Class counsel expended 2,431 hours litigating this action (Doc. 135 at 20), which limited for several years the time that class counsel could devote to other matters. The action required expertise in ERISA, the Labor Management Relations Act, and Rule 23, and class counsel's performance evidences skill rarely demonstrated by the typical class-action litigator in this district. Despite Gerdau's insistence that the agreements imposed no obligation to continue the health insurance at a fixed cost, class counsel

secured an excellent result; the parties appraise the health insurance and the life insurance at $16 million. (Doc. 135-1 at 5)

Although class counsel argues that a reasonable hourly rate in the "national market for ERISA class-action plaintiff's counsel" exceeds $500, this order need not decide the reasonableness of that rate. The agreed sum of $725,000 compensates class counsel at an effective hourly rate less than $300 (after subtracting costs and reasonable expenses, the agreed sum yields an hourly rate of approximately $250). Because the agreed fee reasonably compensates class counsel in this instance, the motion (Doc. 135) for an attorney's fee is **GRANTED**.

## CONCLUSION

Because the settlement resolves the action fairly, reasonably, and adequately, the settlement is **APPROVED**. The action is **DISMISSED WITH PREJUDICE**, and the clerk is directed to close this case. Jurisdiction is retained until November 13, 2018, to ensure the implementation of the settlement.

ORDERED in Tampa, Florida, on November 13, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE